CHARLES E. COFFIN, *Plaintiff in Error*, v. ANDREW H. TALBOT, *Defendant in Error.*

148 So. 184.

Division A.

Opinion filed May 9, 1933.

Re-hearing denied May 26, 1933.

132

*Stapp, Gourley, Vining & Ward,* for Plaintiff in Error;

*E. F. B. Brigham and R. A. Rasco,* for Defendant in Error.

Ellis, J.—On April 15, 1925, Charles F. Coffin executed in favor of Vernon C. Seaver two promissory notes, in the sum of $5,000.00 each, payable on or before two and

three years respectively after date. Each was a negotiable promissory note.

On March 7 ,1930, Andrew H. Talbot, to whom the notes had been indorsed after maturity by Seaver, brought his action against Coffin in the Circuit Court for Dade County upon the notes.

The defendant interposed a plea of set-off in which it was averred that on April 15, 1925, the defendant purchased of Vernon C. Seaver a lot described as Lot 9 of Block H of Bricknell Hammock, Unit 1 Extension in Dade County, for which he agreed to pay $20,000.00, $10,000.00 of which had been paid and the remaining $10,000.00 debt was evidenced by the other notes described in the declaration. It is further averred that Seaver and his wife executed a deed to Coffin conveying the land; that the deed of conveyance was in the statutory form which was a full warranty with common law covenants. (Chap. 4038, Acts 1891, Sec. 3788, R. G. S., 1920, Sec. 5661 C. G. L. 1927).

The plea averred that Seaver acquired the land from McGahey in August, 1924, McGahey acquired from Gresham Manufacturing Company a month before, and that Company acquired it from the executors of the will of Mrs. Brickell in April, 1923; that the deeds of conveyance from the executors of the will of Mrs. Brickell to the Gresham Company and from that Company to McGahey contained certain restrictions as to the use of the property to the effect that no house or structure to be used as a business room, storage house, apartment house, hotel, sanitarium, church "or for any other business or commercial * purpose" should be constructed on the lot conveyed, nor should any "business or commercial enterprise be operated or maintained thereon;" that the deed contained a provision to the effect that a "violation in whole in part of the said restric-

tion and limitation by the grantee, his heirs, executors, administrator and assigns, or by the owner or owners of the real estate thereon conveyed, by virtue of any judicial proceedings, shall cause the said land immediately to revert to the grantors, their heirs, executors, administrators, successors or assigns, and shall entitle the grantors, their heirs, executors, administrators, succesors or assigns, immediately to enter upon said property without notice, and take possession of the same with full title in fee simple, together with all improvements thereon."

It is averred that such clause in the deeds of conveyance to the predecessors in title of Seaver constituted an encumbrance upon the title which Seaver conveyed to Coffin and the covenant against encumbrances was breached upon the execution of the deed. The defendant bases his claim for the injury he claims to have sustained by the averred breach of the covenant against encumbrances upon the fact averred that he had entered into a contract with a woman to sell the land at a large profit but she refused to carry out the purchase because of the existence of the restrictions in the conveyances mentioned.

This plea was stricken on motion. Thereupon amended and additional pleas were interposed. There were two; one was named a defense on equitable grounds. In each of these the substance of the original plea was repeated but made more lengthy by greater detail and from which was omitted the contract of sale for a profit and the loss of the chance to sell, but in its place was inserted an averment that because of the existence of the restriction in the deed named the "vendible and usable value" of the lot was decreased by a large sum by reason of which the consideration for the two notes had failed and defendant offered to "recoup so much of the said damages sustained by him" as "shall equal

the damages sustained by the plaintiff by reason of the matters set forth in the two counts of the declaration." The second plea was in substance and words the same as the first amended plea. Both demurrer and motion to strike these pleas were sustained.

Thereupon another amended and additional plea, not different in substance but slightly in the words employed to set up the original was interposed. This plea concluded with the averment that the plaintiff Talbot paid no consideration to Seaver for the notes and that Seaver had no title or interest in the notes and that Talbot was not entitled to maintain the action. This plea also offered to set off the damages sustained as averred by reason of the existence of the restriction contained in the two deeds. A demurrer and a motion to strike this plea was sustained and as the defendant declined to plead further judgment was entered for the plaintiff to which a writ of error was taken.

The above statement of the substance of the defense sought to be interposed to the action of the two notes and the reference to the several and lengthy pleas by which the defense was sought to be utilized may not be justified because the question could be tersely stated as gathered from all the pleas and presented in a few paragraphs to the saving of some expense to the State. The statement is made, however, in the hope that the thought may be emphasized that in pleading there is little or no virtue in prolixity. A defense such as was sought to be used in this case in an action on promissory notes could be presented in one plea completely in fewer words.

Whether the maker of a promissory note may be set up as a defense in an action against him by the indorsee of the payee after maturity that the note was given in part payment of the purchase price of the lands conveyed to the maker of the note by the payee by a deed of conveyance con-

taining a covenant against encumbrances where there existed a restriction upon the use of the land contained in conveyances to the predecessors in title of defendant's grantor, is the defense sought to be presented by the pleas.

As to a holder after maturity the note is taken with notice of equities existing between maker and payee, but such equities only, as affect the note itself and not subject to a set-off in respect to a debt due from the payee to the maker arising out of collateral matters.    Lines v. Smith, 4 Fla. 47; Kilcrease v. White, 6 Fla. 45; Birmingham Trust & Savings' Co. v. Jackson Co. Mill Co., 41 Fla. 498, 27 Sou. Rep. 43; Haughey v. Heaney, 89 Fla. 102, 103 Sou. Rep. 400.

There has been much discussion and some diversity of opinion relating to the rule governing defenses to which a promissory note in the hands' of an indorsee after maturity may be subject. The rule has been loosely stated to be that when a negotiable promissory note comes to an indorsee after maturity it comes to him discredited and dishonored and the indorsee takes it wholly on the credit of his assignor and subject to all demands of the maker that existed against the payee at the time of the transfer.

The rule has also been stated to be as follows, that the note is subject to all the equities existing between the maker and payee when held by one who acquires it after maturity.

Obviously the language in which the rule is thus loosely expressed requires some modification.

As stated by this Court in the Kilcrease case, *supra*, the term "equities" does not mean all sorts of equities existing between the parties from other independent transactions between them, but only such equities as attach to the particular note would be available to control, qualify or extinguish any right arising thereon. The authorities are fully reviewed in that case.

As to the matter of set-off, this Court said in Birmingham Trust & Savings Company case, *supra,* that the right of the defendant does not exist at common law and whatever right may be insisted upon in this respect must depend upon the extent of statutory regulations on the subject. Interpreting the Kilcrease case the court said that the indorsee of an over due note takes it as against the maker with all the equities arising out of the note transaction itself but not subject to a set-off in respect to a debt due from the indorser to the maker of the note arising out of collateral matters, that the doctrine rests upon the law merchant and not the statute of set-off. It is generaly conceded and may be stated as a universal rule that equities arising between maker and payee subsequently to the transfer of the note will not attach to it in the hands of the assignee.

Many cases seem to lay down the broad rule that a note in the hands of one who acquired it after maturity is subject to "all existing defenses or all equities against it. In many cases the rule seems to be stated that in such circumstances the note is subject to "all equities and defenses existing in favor of the maker against the payee." Still another long line of authorities, amongst which this Court has placed itself, holds the rule to be that in such circumstances the note in the hands of the indorsee is subject to "all equities and defenses arising out of the paper itself, or out of the transasction with reference to which it was made, or out of any agreement between the *parties* with relation to it and attaching to the instrument itself."

Under the latter rule, anything which denies the validity of the note, or that constitutes a bar to an action upon it as distinguished from anything which constitutes an admission or affirmance to the plaintiff's right of action and his title to the money he seeks to recover, and seeks to defeat the recov-

ery by establishing liability on his part may be shown in evidence under the general issue.

The reason for the above rule and *ratio decedendi* of the decision is ably expressed by Chief Justice HORNBLOWER in the cases of Cumberland Bank v. Hann, 18 N. J. L. (Harrison's Reports) 222, as follows in substance. If the relation of mutual dealers does not exist between the plaintiff and the defendant the statute of set-off does not apply; if the defendant has no cause of action against the *plaintiff* he has nothing he can set off against the plaintiff's demand; the indorsee of the note after maturity takes the note subject to all *equities* existing between the maker and payee and such *defense* may be set up against the indorsee if it could have been set up against the indorser is familiar language to every lawyer, but what constitutes such *equities* are matters within the range of fraud, mistake, want or failure or consideration, release or anything which goes to show that he ought never to be compelled to pay the note to the person to whom it was originally given, or he may prove payment directly, or indirectly in money or otherwise by himself to the payee or any indorsee before it came to the hands of the plaintiff. In general terms the defendant may prove anything that destroys or satisfies the note, anything that denies its validity or that constitutes a *bar* to an action upon it. At the common law a defendant could only give in evidence such claims against the plaintiff as would be in the nature of payment or accord and satisfaction, but he could not have the defense as a set-off but only as payment of satisfaction, in order to have the benefit of such claims or payment against the plaintiff in the action the defendant must give some evidence to show that by some agreement or understanding, express or implied, between him and the plaintiff they were to be received in or to operate as payment of

the debt sued for. Without such evidence they remained mere matters of account or causes of action.

To modify this rigid rule of the common law our statute of set-off was enacted early in the judicial history of the State. See Sec. 4326 C. G. L. 1927 (Sec. 2660 R. G. S. 1920) Acts of 1928. Its language is: "All debts or demands mutually existing between the parties at the commencement of the action, whether the same be liquidated or not, shall be proper subjects of set-off, and may be pleaded accordingly."

This right did not exist at common law. Birmingham Trust & Savings Co. v. Jackson Co. Mill Co., *supra.*

The set-off must be pleaded and exist in favor of the defendant in the same right in which he is sued. Lucas v. Wade, 43 Fla. 419, 31 Sou. Rep. 231. Independent demands cannot be set-off. Hooker v. Forrester, 53 Fla. 392, 43 Sou. Rep. 241.

A set-off is allowed in an action on contract only for matters growing out of the contract. Damages from annoying suits, malicious prosecutions, slander or title, injury to one's credit, though relating to the subject matter of the plaintiff's suit, cannot be set-off. Brash v. Ehrman, 56 Fla. 153, 47 Sou. Rep. 937.

Where there has been a contract of sale and the contract has been breached by the seller to the injury of the purchaser he may set up the contract and breach and the damages by way of *set-off* to the claim for the value of the goods, but a party may not purchase and retain the goods of another and when sued for their value set up a breach of the contract to defeat payment. Stephen Lumber Co. v. Cates, 62 Fla. 382, 56 Sou. Rep. 298. Section 4731 R. G. S. 1920 (Sec. 6817 C. G. L. 1927). Subjecting negotiable paper in the hands of a "holder not in due course" as defined in Section 4725 R. G. S. (Sec. 6811 C. G. L. 1927)

to the same defenses as if negotiable does not enlarge the scope of the statute of set-off, Sec. 2660 R. G. S. 1920 (4326 C. G. L .1927) for the right of set-off is not a defense. See Worden v. Gillett, 275 Fed. Rep. 654.

Now the defense sought to be interposed by the defendant in this case, while good as a plea or pleas of set-off against the original payee, it is valid only under the statute of set-off and not at common law, but as against the plaintiff in this action, a holder of the notes not in due course it is not available because the claim is not one mutually existing between the parties in this action and the negotiable instrument law does not enlarge the scope of the statute of set-off. The pleas do not set up equities between the defendant and the original payee of the notes available against the plaintiff in this case because the so-called equities do not go to the validity of the notes nor to the right of the original payee to recover upon them. The pleas merely show a right of the defendant to recover from the original payee for damages for the averred breach of the covenant and in no sense attack the validity of the notes.

The pleas do not set up a failure of consideration thereby attacking the validity of the notes, but on the other hand affirmatively show a valid consideration for the notes against which the defendant may set-off as against the payee the damages sustained from the alleged breach of the covenant. While the claim grows out of the transaction in which the notes formed a part it is not a claim affecting the validity of the notes and therefore not an equity, but is a claim for damages only which is not available as against the plaintiff because the element of "mutuality existing between the parties" is not shown by the

plea. Such has been the law as applied and recognized in this State from the earliest times in its history.

The judgment of the court is therefore affirmed.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., coucur in the opinion and judgment.