564 F.2d 721
 Barbara BORNSTEIN, as Trustee for National Indemnity Company
of Omaha, Plaintiff-Appellee,
v.
CITIZENS NATIONAL BANK OF ORLANDO, now known as Pan American
Bank of Orlando, N.A., Defendant-Appellant.
 No. 75-2965.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 15, 1977.
 
 Winifred J. Sharp, Orlando, Fla., for defendant-appellant.
 Hugh M. Palmer, Orlando, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before JONES, COLEMAN and TJOFLAT, Circuit Judges.
 PER CURIAM:
 
 
 1
 CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO SECTION 25.031, FLORIDA STATUTES 1975, AND RULE 4.61, FLORIDA APPELLATE RULES.
 
 
 2
 TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:
 
 
 3
 It appears to the United States Court of Appeals for the Fifth Circuit that there are involved in the appeal of the above-styled case now pending in this Court questions or propositions of law of the State of Florida which are determinative of the cause, and that there appear to be no clear controlling precedents in the decisions of the Supreme Court of the State of Florida. The United States Court of Appeals for the Fifth Circuit therefore certifies such questions or propositions of the laws of the State of Florida to the Supreme Court of Florida for instructions concerning such questions or propositions of State law, based on the facts recited herein, pursuant to § 25.031, Florida Statutes 1975 and Rule 4.61, Florida Appellate Rules, as follows:
 
 
 4
 (1) Style of the Case
 
 
 5
 The style of the case in which this certificate is made is as follows: BARBARA BORNSTEIN, Plaintiff-Appellee versus CITIZENS NATIONAL BANK OF ORLANDO, Defendant-Appellant, case no. 75-2965, United States Court of Appeals for the Fifth Circuit, said case being an appeal from the United States District Court for the Middle District of Florida.
 
 
 6
 (2) Statement of Facts
 
 
 7
 On November 30, 1973, Milford Mechanical Corporation (Milford), through its president, Frank Iadarola, purchased a $13,000 certificate of deposit from Citizens National Bank of Orlando (Bank). At the time of the purchase, Milford was indebted to the Bank. The front of the form of the certificate of deposit states, in relevant part:
 
 
 8
 Payable to the registered owner upon presentation and surrender of the certificate . . . .
 
 
 9
 This certificate is assignable only with the consent of and on the books of the Citizens National Bank of Orlando.
 
 
 10
 On the reverse side, the following printed language appears:
 
 
 11
 ASSIGNMENT (Effective only when recorded on books of the bank)
 
 
 12
 The certificate of deposit was not negotiable.
 
 
 13
 At the same time, a signature card relating to the deposit represented by the certificate of deposit was executed by Iadarola on behalf of Milford. Immediately above the signature line on the form is printed:
 
 
 14
 This bank is authorized to apply this account, whether savings or certificate of deposit, toward the payment of any indebtedness due this bank from the depositor or depositors, or either of them, whether the debt is several and this account is joint, or the debt is joint and the account is several.
 
 
 15
 On December 18, 1973, Iadarola signed the assignment on the reverse side of the certificate of deposit on behalf of Milford and filled in National Indemnity Company of Omaha (National Indemnity) as the assignee. This was done to provide collateral for a bond Milford was purchasing from National Indemnity. National Indemnity later typed and executed a similar assignment form on the reverse side of the certificate of deposit and, for National Indemnity's benefit, assigned the certificate of deposit to Barbara Bornstein, as trustee of National Indemnity.
 
 
 16
 The Bank's records were never changed to show any assignment or transfer of the certificate of deposit and there is no evidence that the Bank was either notified of either assignment or consented to them. In March 1974, the Bank drew a check payable to Milford for the interest earned on the certificate of deposit. This check was endorsed and deposited by Milford.
 
 
 17
 Milford had borrowed $250,000 from the bank, evidenced by a series of promissory notes, at the time it purchased the certificate of deposit. The last note in the series was an unsecured, consolidated renewal note for $250,000 dated February 21, 1974, and due thirty-two days from that date.
 
 
 18
 The Bank received the certificate of deposit with a letter requesting payment to Bornstein on April 22, 1974. This was the Bank's first notice of the assignments. On April 29, 1974, the Bank set-off the funds represented by the certificate of deposit against the $250,000 debt owed it by Milford and refused to pay the funds to Bornstein. The next day, the Bank sent a letter to Milford and the co-endorsers informing them of the set-off and demanding that the balance of the debt be paid by May 7, 1974.
 
 
 19
 From the date of the purchase, November 30, 1973, through April 30, 1974, the Bank did not change its position in reliance upon the certificate of deposit. The Bank, however, did not exercise its right of set-off until April 29, 1974.
 
 
 20
 (3) Questions of Law :
 
 
 21
 The parties are unable to agree on the questions for certification. We have therefore chosen the following questions to delineate the issues.
 
 Questions To Be Certified
 I.
 
 22
 A. Is the assignment of the non-negotiable certificate of deposit as security for the purchase of a bond a transfer entitled to secured transaction treatment under Article 9 of the Florida Uniform Commercial Code, Fla.Stat.Ann. §§ 679.9-101 et seq. (West 1966), and, if so
 
 
 23
 B. Is the transfer excluded from coverage under Article 9 by the provisions of Fla.Stat.Ann. § 679.9-104(9) (West 1966) or Fla.Stat.Ann. § 679.9-104(11) (West 1966)?
 
 
 24
 II. If Article 9 of the Florida Uniform Commercial Code covers this transaction and the transfer is not excluded from the coverage:
 
 
 25
 A. Does Fla.Stat.Ann. § 679.9-318(4) (West 1966) invalidate the prohibition against assignment without the consent of the bank and the notation of the assignment on the books?
 
 
 26
 B. Is the Bank's asserted right of set-off established by Fla.Stat.Ann. § 679.9-318(1) (West 1966)?
 
 
 27
 III. If Article 9 of the Florida Uniform Commercial Code does not cover this transaction:
 
 
 28
 A. Is the prohibition against assignment without the consent of the Bank valid and enforceable against Bornstein, thereby rendering the assignments ineffective?
 
 
 29
 B. Is the "collateral transaction" rule of Coffin v. Talbot, 110 Fla. 131, 148 So. 184 (1933), and Nusbaum v. Riskin, 136 So.2d 1 (2d D.C.A. Fla. 1961) still in effect? If the "collateral transaction" rule is still in effect:
 
 
 30
 1. Is the Bank's asserted right of set-off defeated by it? or
 
 
 31
 2. Is the "collateral transaction" rule avoided by the creation of a contractual right of set-off in the signature card which is not collateral to but, rather, part of the purchase and issuance of the certificate of deposit?
 
 
 32
 C. Is the Bank entitled to set-off the funds represented by the certificate of deposit if it has not changed its position in reliance on the deposit?
 
 
 33
 D. Is the Bank's asserted right to set-off defeated by its actual knowledge of the attempted assignment transaction prior to the time that the set-off was consummated?