374 So.2d 6 (1979)
CITIZENS NATIONAL BANK OF ORLANDO, Now Known As Pan American Bank of Orlando, N.A., Defendant-Appellant,
v.
Barbara BORNSTEIN, As Trustee for National Indemnity Company of Omaha, Plaintiff-Appellee.
No. 53125.
Supreme Court of Florida.
July 18, 1979.
*7 Winifred J. Sharp of Johnson, Motsinger, Trismen & Sharp, Orlando, for defendant-appellant.
Hugh M. Palmer of Welbaum, Zook, Jones & Williams, Orlando, for plaintiff-appellee.
HATCHETT, Justice.
We have before us certified questions from the United States Court of Appeals for the Fifth Circuit, concerning the set-off rights and defenses available to an obligor against the assignee of a non-negotiable certificate of deposit. Bornstein v. Citizens National Bank of Orlando, 564 F.2d 721 (5th Cir.1977). This proceeding is authorized by section 25.031, Florida Statutes (1977) and Fla.R.App.P. 9.510. We conclude: (1) that the transfer of the certificate of deposit as security for the purchase of a bond was the assignment of a non-negotiable instrument entitled to secured transaction treatment under article 9 of the Florida Uniform Commercial Code, sections 679.101 et seq., Florida Statutes (1973); (2) that neither the provisions of section 679.104(9) nor section 679.104(11) exclude the transfer from coverage under article 9; (3) that section 679.318(4) does not invalidate the prohibitions against assignment; and (4) that the obligor, "Bank," is not an "account debtor" entitled to any article 9 defenses under section 679.318(1). We do not reach certified question III.
The facts, as presented by the Court of Appeals for the Fifth Circuit, are as follows:
On November 30, 1973, Milford Mechanical Corporation (Milford), through its president, Frank Iadarola, purchased a $13,000 certificate of deposit from Citizens National Bank of Orlando (Bank). At the time of the purchase, Milford was indebted to the Bank. The front of the form of the certificate of deposit states, in relevant part:
Payable to the registered owner upon presentation and surrender of the certificate... .
.....
This certificate is assignable only with the consent of and on the books of the Citizens National Bank of Orlando.
On the reverse side, the following printed language appears:
ASSIGNMENT
(Effective only when recorded on the books of the bank)
The certificate of deposit was not negotiable.
At the same time, a signature card relating to the deposit represented by the certificate of deposit was executed by Iadarola on behalf of Milford. Immediately above the signature line on the form is printed:
This bank is authorized to apply this account, whether savings or certificate of deposit, toward the payment of any indebtedness due this bank from the depositor or depositors, or either of them, whether the debt is several and this account is joint, or the debt is joint and the account is several.
On December 18, 1973, Iadarola signed the assignment on the reverse side of the certificate of deposit on behalf of Milford *8 and filled in National Indemnity Company of Omaha (National Indemnity) as the assignee. This was done to provide collateral for a bond Milford was purchasing from National Indemnity. National Indemnity later typed and executed a similar assignment form on the reverse side of the certificate of deposit and, for National Indemnity's benefit, assigned the certificate of deposit to Barbara Bornstein, as trustee of National Indemnity.
The Bank's records were never changed to show any assignment or transfer of the certificate of deposit and there is no evidence that the Bank was either notified of either assignment or consented to them. In March 1974, the Bank drew a check payable to Milford for the interest earned on the certificate of deposit. This check was endorsed and deposited by Milford.
Milford had borrowed $250,000 from the bank, evidenced by a series of promissory notes, at the time it purchased the certificate of deposit. The last note in the series was an unsecured, consolidated renewal note for $250,000 dated February 21, 1974, and due thirty-two days from that date.
The Bank received the certificate of deposit with a letter requesting payment to Bornstein on April 22, 1974. This was the Bank's first notice of the assignments. On April 29, 1974, the Bank set-off the funds represented by the certificate of deposit against the $250,000 debt owed it by Milford and refused to pay the funds to Bornstein. The next day, the Bank sent a letter to Milford and the co-endorsers informing them of the set-off and demanding that the balance of the debt be paid by May 7, 1974.
From the date of the purchase, November 30, 1973, through April 30, 1974, the Bank did not change its position in reliance upon the certificate of deposit. The Bank, however, did not exercise its right of set-off until April 29, 1974.
564 F.2d 721, 722-3.
It appearing that there were determinative issues involved with no clear controlling precedent in the decisions of this court, the Court of Appeals for the Fifth Circuit certified to us a number of questions which we address in the order outlined by that court.[1]

*9 I. Article Nine Coverage

A. Is the assignment entitled to article nine treatment?
We answer in the affirmative. Under section 679.102(1)(a), article 9 is said to apply:
To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; ... [Emphasis added.]
Both parties recognize that the assignment by Milford of the certificate of deposit was intended as security for the purchase of a bond from National Indemnity, the assignee. National Indemnity, then, was the clear beneficiary of a security interest in the certificate for its sale of the bond to Milford. Therefore, provided the certificate of deposit properly falls within one of the "personal property" classifications named in section 679.102(1)(a), the assignment is a transfer entitled to secured transaction treatment under article 9. The parties agree that the certificate falls under the "personal property" designation of section 679.102(1)(a), but disagree as to its precise classification  the appellant calling it either a "general intangible" or "contract right" as defined in section 679.106, the appellee insisting that it is best described as an "instrument" under section 679.105(1)(g). In either event, the transaction would fall under article 9's coverage.
We agree with the appellee that the certificate of deposit here is best characterized as an "instrument" under section 679.105(1)(g). As defined in that section, an "instrument" is:
a negotiable instrument (defined in s. 673.104), or a security (defined in s. 678.102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment. [Emphasis added.]
We believe the emphasized portion of the above definition to be an accurate description of the certificate of deposit here. Although it was later assigned by Milford as security for a bond, the certificate as purchased from the Bank simply evidenced the right to payment and was clearly not an agreement creating or providing for a "security interest" as that term is defined in section 671.201(37). While admitting that most authorities define certificates of deposit as "instruments," the Bank argues that the restrictions on transfer here remove the certificate from coverage under section 679.105(1)(g). (The Bank cites cases dealing with the negotiability of instruments under section 673.104(1) in support of its position.) We disagree. If the code drafters had intended to exclude non-negotiable instruments from coverage under section 679.105(1)(g), they would not have added the underlined language in the definition, but would have limited it to include only "negotiable instruments" as was done in article 3.
We find persuasive the reasoning of the Texas Civil Appellate Court in First National Bank in Grand Prairie v. Lone Star Life Insurance Co., 524 S.W.2d 525 (Tex. Civ.App. 1975). There, the court held a certificate of deposit payable to the depositor only, with the restrictive legend, "Non-Negotiable," to be an "instrument" under the article 9 definition. The court stated:
Simplicity and clarity in such transactions is better achieved by holding as a matter of law that a non-negotiable certificate of deposit is an "instrument" as defined by § 9.105(a)(9). [§ 679.105(1)(g), Fla. Stat. (1973).] Unquestionably, it satisfies the requirement in this definition of a "writing which evidences the right to the payment of money." We conclude that it also is "of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." The word "type" may be interpreted either narrowly or broadly. In the light of the general purpose of the Code, we do not construe it narrowly to refer only to writings of exactly the same character, such as, in this case, other non-negotiable *10 certificates of deposit. Instead, we construe it broadly to include any writing which, like a stock certificate or negotiable instrument, is treated as a token of the rights it represents and, therefore, is normally delivered to any person to whom the rights are transferred. The certificate in question resembles such instruments more than it resembles ordinary deposit accounts... . It is a writing which the holder must keep and present as evidence of its right, as its language expressly provides. It may easily be delivered by one party to another in the course of a commercial transaction.
First National Bank in Grand Prairie v. Lone Star Life Insurance Co., 524 S.W.2d 525, 533-4.
We agree that the emphasized language in section 679.105(1)(g) should be interpreted broadly to encompass non-negotiable certificates of deposit. We do not consider the restrictions on assignability requiring consent of and recorded transfer by the Bank to exempt this certificate from the broad coverage of section 679.105(1)(g). We conclude that the certificate of deposit here is an "instrument" as described in the emphasized portion of section 679.105(1)(g) and that the assignment is therefore entitled to secured transaction treatment under article 9.

B. Is the transfer excluded from article nine coverage by the provisions of section 679.104(9) or section 679.104(11), Florida Statutes (1973)?
We do not agree with the Grand Prairie court that the seller of the certificate, the Bank here, is necessarily prevented from asserting any set-off against the assignee, where the assignee has already perfected the non-negotiable instrument by taking possession under section 679.304(1). The Bank asserts its claim not as a secured party, but as a debtor under the certificate whose claim to the funds represented thereby arises solely by virtue of its asserted right of set-off.[2] We do not interpret the set-off exclusion from article 9 coverage under section 679.104(9) to prevent the bank from asserting any rights to set-off it may have against a secured party with a perfected security interest under article 9. To the contrary, we construe this section to mean that the claimant of a right to set-off need not comply with article 9 security and filing requirements in order to assert whatever set-off rights he may aptly demonstrate. The section means simply that a right of set-off may exist in a creditor who does not have a security interest. It does not effectuate the exclusion of this transfer from article 9 coverage. Associates Discount Corp. v. Fidelity Union Trust Co., 111 N.J. Super. 353, 263 A.2d 330 (Law Div. 1970).
Because we do not construe "deposit account" to include an account evidenced by a certificate of deposit we are equally confident that the transfer in question is not excluded from coverage under article 9 by the section 679.104(11) provision excepting the chapter's application "To a transfer ... of any deposit, savings, passbook, or like account." See, U.C.C. § 9-105(1)(e) (1972 revision).

II. If article 9 of the Florida Uniform Commercial Code covers this transaction, are the restrictions on assignment invalidated or the Bank's asserted right to set-off established by sections 679.318(1), (4), Florida Statutes (1973)?
The defenses outlined in section 679.318(1) are available to an "account debtor" as defined in section 679.105(1)(a). Under that section, an account debtor "means *11 the person who is obligated on an account, chattel paper, contract right or general intangible." The certificate of deposit here does not fall within any of these classifications:
(a) Section 679.105(1)(b) defines "chattel paper" as "a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods." The certificate of deposit here evidences a right to payment but not as a security interest in specific goods.
(b) Under 679.106, "account" means "any right to payment for goods sold or leased or for services rendered." Here, no goods were transferred and no services were rendered.
(c) Under section 679.106, "contract right" means any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper. A contract right is described as a yet to be earned right to payment not generally evidenced by a document. Although the Bank argues that the certificate of deposit ought to be termed a contract right, it cites no authority for this position. As appellee points out, examples in the official ALI comments to this section include work to be completed under a building contract and deliveries made under an installment contract. The debt here is evidenced by a writing and the right to its payment was "earned" when it was purchased from the Bank for $13,000. It is therefore not a contract right as defined in this section.
(d) Section 679.106 defines "general intangible" as "any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents and instruments." Examples in the ALI comments include goodwill, literary rights, and rights to performance of a copyright, trademark, or patent. It was the obvious intention of the drafters to include as a general intangible any intangible asset which had not been specifically defined or excluded in some other section of the Uniform Commercial Code. Kapp v. United States, 20 UCC Rptr. 1355 (U.S.Dist.Ct.N.D. Ill. 1976). Because under our analysis the certificate of deposit here may best be classified as an "instrument" under section 679.105(1)(g), it is not encompassed by the broad catch-all category of general intangible. The cases cited on this point by the Bank do not persuade us otherwise.[3]
We conclude that the certificate of deposit is not properly classified as an account, chattel paper, contract right, or general intangible. The Bank is, therefore, not an "account debtor" as defined in section 679.105(1)(a). Accordingly, it may not avail itself of the article 9 defenses delineated in section 679.318(1). By the same token, since the transaction does not amount to a "contract between an account debtor and an assignor," section 679.318(4) does not operate to invalidate the restrictions on assignment here.
The Bank finally argues that even if the section 679.318(1) defenses are not expressly available to an obligor against an assignee of a non-negotiable instrument, the Code ought to be liberally construed to permit the Bank to utilize the article 3 "simple contract defense" of section 673.306. Under the Bank's analysis, the simple contract defenses of this section incorporate the set-off rights which are otherwise available to an account debtor on a simple contract under section 679.318. In reaching this conclusion, the Bank presents the following incorporation argument:
*12 (1) No article 9 defenses are available to an obligor when sued by an assignee of an "instrument" as defined in section 679.105(1)(g). (The Bank perceives this to be a "gap" in the Code.)
(2) The assignment rules in sections 673.305, 306, and section 678.202 partially fill this gap in providing defenses for obligors of "negotiable instruments" and "securities."
(3) On the other hand, obligor defenses against assignees of article 9 "non-negotiable instruments" do not appear to be recognized under any Code provision. (Article 3 defines "instrument" only as a "negotiable instrument" in section 673.102(1)(e).)
(4) One exception, however, to the rule that the article 3 term "instrument" means only "negotiable instrument" is found in section 673.805 which provides:
This chapter applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this chapter but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument.
The official ALI comments to this section state that:
This section covers the "non-negotiable instrument"... It refers to a particular type of instrument which meets all requirements as to form of a negotiable instrument except that it is not payable to order or to bearer. ... Since it lacks words of negotiability there can be no holder in due course of such an instrument, and any provision of any section of this Article peculiar to a holder in due course cannot apply to it. With this exception such instruments are covered by all sections of this Article. [Emphasis added.]
(5) Section 673.306 sets forth the defenses of an obligor against one not a holder in due course. Because this section is "not peculiar to a holder in due course," the type of non-negotiable instruments discussed in section 673.805 are covered by it.
(6) Therefore, if the certificate of deposit in this case is the type of "non-negotiable instrument" discussed in section 673.805, the Bank is the beneficiary of the defenses set forth in section 673.306.
(7) Section 673.306(2) provides that a non-holder in due course, the assignee here, takes the instrument subject to "All defenses of any party which would be available in an action on a simple contract."
(8) The "simple contract" language of section 673.306(2) incorporates the article 9 defenses by reference, since the defenses in section 679.318 are available to an account debtor on a simple contract.
(9) The article 9, section 679.318 defenses having been made applicable, the rights of the assignee here are subject to "All the terms of the contract between the account debtor [bank] and assignor and any defense or claim arising therefrom." (Section 679.318(1)(a).)
(10) Finally, in the event the court does not feel that the instrument here qualifies as a section 673.805 "non-negotiable instrument," the Bank argues that a liberal construction of the act should be taken to apply every section of article 3 to all "non-negotiable instruments" unless the context of the section otherwise requires. In this event, the section 673.306 defenses would apply to the Bank here.
While the Bank's argument is an appealing one, its incorporation analysis does not withstand close scrutiny. The certificates of deposit in this case are not within the category of non-negotiable instruments addressed in section 673.805. That section draws into article 3 coverage any instrument, the terms of which do not preclude transfer and which, but for the fact that it is not payable to order or to bearer, is otherwise negotiable under the article 3 definition. The cases cited by the Bank which have used the 3-805 definition in order to extend the 3-306 defenses to obligors on non-negotiable instruments, recognize that the certificates "must meet all the requirements of negotiability" except the "payable to order or to bearer" criterion in *13 order to be covered by section 3-306. See, D. Nelsen & Sons, Inc. v. General American Development Corp., 6 Ill. App.3d 6, 284 N.E.2d 478 (1972). Section 673.104(1)(b) provides that to be negotiable an instrument must, in addition to being payable to order or to bearer, "Contain an unconditional promise or order to pay a sum certain in money." Here, in the event of assignment, the promise to pay is conditioned upon consent of the Bank and reflection of the assignment on the books of the Bank. Because the instrument does not contain an unconditional promise to pay, it does not meet the other "requirements" for negotiability under section 673.104(1). Therefore, the certificate of deposit is not of the non-negotiable variety to which section 673.805 refers, and the Bank's analysis breaks down at point six above.
Even if the court were to adopt a liberal construction of the chapter to apply section 673.306 defenses to all non-negotiable instruments without submitting them to the "otherwise negotiable" test of section 673.805, the "simple contract" defense of section 673.306(2) by no means incorporates the section 679.318 defenses as the Bank suggests. First, the Bank concedes that if the certificate in question was classified as a "contract right" or an "account," section 679.318(4) would invalidate all attempts to prohibit assignments, including the restrictions on alienability here. See, Florida First National Bank v. Fryd Construction Corp., 245 So.2d 883 (Fla. 3d DCA 1971). Second, and more important, section 679.318(1) addresses defenses available to "account debtors." We have earlier determined that the Bank is not an account debtor as defined in section 679.105(1)(a). If it were, the Bank would clearly be entitled to section 679.318 defenses and we would have had no need to pursue this incorporation analysis. The framers apparently intended that the article 9 defenses provided in section 679.318 would not be available to the obligor of an "instrument" since "account debtor" does not include a debtor on an instrument. It is logically inconsistent for the framers of the Code to extend certain defenses only to account debtors under article 9, while permitting these same defenses to be used by obligors of non-negotiable instruments via other provisions of the Code. Accordingly, we reject the Bank's incorporation argument and conclude that it may not utilize section 673.306 to incorporate the article 9 defenses for use against the assignee here.
Because we agree with both parties that the transfer is not excluded from coverage under article 9, we do not reach certified question III.
Summarizing our answers to the questions certified, we find that the assignment by Milford of the certificate of deposit as security for the payment of a bond purchased from National Indemnity was the assignment of a non-negotiable instrument entitled to secured transaction treatment under article 9; that neither the provisions of section 679.104(9) nor section 679.104(11) exclude the transfer from coverage under article 9; that section 679.318(4) does not invalidate the restrictions on assignment since the transaction is not a "contract between an account debtor and an assignor;" and that neither by incorporation through section 673.306 nor by the express terms of article 9 is the Bank's asserted right to set-off established under section 679.318(1).
ENGLAND, C.J., and ADKINS and BOYD, JJ., concur.
OVERTON and ALDERMAN, JJ., dissent.
NOTES
[1] The certified questions as stated by the Fifth Circuit are as follows:

I. A. Is the assignment of the non-negotiable certificate of deposit as security for the purchase of a bond a transfer entitled to secured transaction treatment under Article 9 of the Florida Uniform Commercial Code, Fla. Stat. Ann. §§ 679.9-101 et seq. (West 1966), and, if so
B. Is the transfer excluded from coverage under Article 9 by the provisions of Fla. Stat. Ann. § 679.9-104(9) (West 1966) or Fla. Stat. Ann. § 679.9-104(11) (West 1966)?
II. If Article 9 of the Florida Uniform Commercial Code covers this transaction and the transfer is not excluded from the coverage:
A. Does Fla. Stat. Ann. § 679.9-318(4) (West 1966) invalidate the prohibition against assignment without the consent of the bank and the notation of the assignment on the books?
B. Is the Bank's asserted right of set-off established by Fla. Stat. Ann. § 679.9-318(1) (West 1966)?
III. If Article 9 of the Florida Uniform Commercial Code does not cover this transaction:
A. Is the prohibition against assignment without the consent of the Bank valid and enforceable against Bornstein, thereby rendering the assignments ineffective?
B. Is the "collateral transaction" rule of Coffin v. Talbot, 110 Fla. 131, 148 So. 184 (1933), and Nusbaum v. Riskin, 136 So.2d 1 (Fla.2d D.C.A. 1961) still in effect? If the "collateral transaction" rule is still in effect:
1. Is the Bank's asserted right of set-off defeated by it? or
2. Is the "collateral transaction" rule avoided by the creation of a contractual right of set-off in the signature card which is not collateral to but, rather, part of the purchase and issuance of the certificate of deposit?
C. Is the Bank entitled to set-off the funds represented by the certificate of deposit if it has not changed its position in reliance on the deposit?
D. Is the Bank's asserted right to set-off defeated by its actual knowledge of the attempted assignment transaction prior to the time that the set-off was consummated?
[2] See, G. Gilmore, Security Interests in Personal Property § 10.7 at 315-16 (1965), where the distinction between a right to set-off and a security interest led the writer to question the purpose of the set-off exclusion: "This exclusion is an apt example of the absurdities which result when draftsmen attempt to appease critics by putting into a statute something that is not in any sense wicked but is hopelessly irrelevant. Of course a right of set-off is not a security interest and has never been confused with one. The statute might as appropriately exclude fan dancing."
[3] Friedman, Lobe & Block v. C.L.W. Corp., 9 Wash. App. 319, 512 P.2d 769 (1975)  assignment of a portion of an expected recovery from a cause of action held to be a general intangible; Bogus v. American National Bank of Cheyenne, Wyo., 401 F.2d 458 (10th Cir.1968)  held that liquor license which amounted to a "personal privilege" did not fall within any of the other Code classifications, and that it therefore constituted a general intangible under UCC 9-106; Kapp v. U.S., 20 UCC Rptr. 1355 (U.S. Dist.Ct.N.D.Ill. 1976)  debtor's present and future entitlement to relocation expenses under a condemnation proceeding held to be a "thing in action" and "not inconsistent with the term general intangible under 9-106 of the UCC;" Copeland v. Stewart, 52 Cal. App.3d 217, 124 Cal. Rptr. 860 (1975)  dicta to effect that insofar as a restricted endorsement affected the negotiability of a note "it may have become a `general intangible'."