In re V.O.C. ANALYTICAL LAB-ORATORIES, INC., TIN: 59–2993905, Debtor.

Patricia Dzikowski, Trustee, Plaintiff,

v.

Bernardo Moreno and Marta Moreno, Nutting Engineers of Fl., Inc., and Jack G. Rouse, Defendants.

U.S. Biosystems, Inc., Defendant Intervener.

No. 00–7774–CIV–HUCK/BROWN.

United States District Court, S.D. Florida.

March 28, 2001.

Order Modifying Order on Denial of Rehearing May, 18, 2001.

---

,Thomas M. Messana, Markowitz Davis Ringel & Trusty, Miami, FL, for U.S. Biosystems, Inc.

John Leonard Walsh, Dzikowski Walsh & Charbonneau, Fort Lauderdale, FL, for Patricia Dzikowski.

## *ORDER*

HUCK, District Judge.

### *Procedural Background*

This is a bankruptcy appeal by Appellant and Plaintiff below, Patricia Dzikowski, Trustee ("Trustee") for a *de novo* review from a final judgment in favor of Appellee and Defendant Intervenor below, U.S. Biosystems, Inc. ("U.S.Biosystems"). The final judgment is based on the bankruptcy court's memorandum decision and order granting U.S. Biosystems' motion for summary judgment and denying the Trustee's cross-motion for summary judgment ("Memorandum Decision"). This Court has jurisdiction pursuant to 11 U.S.C. § 158(a)(1).

In summary, the Trustee contends that the bankruptcy court erred in deciding that a promissory note, which contained a restriction on assignment, was a "general intangible" rather than an "instrument" or a "negotiable instrument" as defined by Florida law.

### *Standard of Review*

■ Factual findings of the bankruptcy court may not be set aside unless the findings are clearly erroneous. However, conclusions of law made by the bankruptcy court are subject to *de novo* review. *In re Calvert,* 907 F.2d 1069 (11th Cir.1990).

## Factual Background [1]

On January 20, 1995, as consideration for a Contract of Sale and Purchase dated January 4, 1995, by which Florida Testing and Engineering, Inc. ("Florida Testing") sold substantially all of its assets to Nutting Engineers of Florida, Inc. ("Nutting"). Nutting executed and delivered to Florida Testing a promissory note in the original principal amount of $485,000 (the "Nutting Note"). On January 20, 1995, Jack G. Rouse executed a Guarantee of Payment of Note (the "Rouse Guarantee") guaranteeing the full and prompt payment of the Nutting Note.

Under the terms of the Nutting Note, Nutting agreed to pay to Florida Testing $485,000, together with interest at the rate of 8.5% per annum, in sixty equal monthly installments of $9,950.52, beginning on February 1, 1995. The Nutting Note further states that:

> [t]he terms of this note are further subject to all of the terms and conditions of that certain Contract of Sale and Purchase ... and this note is neither negotiable nor assignable, except to A.M. Brown, Inc., and if negotiated to or assigned to A.M. Brown, Inc., such negotiation or assignment shall be conditional to and subject to all of the terms, conditions and obligations in the aforementioned Contract of Sale and Purchase....

Pursuant to a Satisfaction of Debt Agreement dated March 30, 1995, by and between Florida Testing and A.M. Brown, Inc., the Nutting Note was assigned to A.M. Brown, Inc. with the consent of Nutting. On September 12, 1996, V.O.C. Analytical Laboratories, Inc. (the "Debtor") entered into a Security Agreement with Comerica Bank, and in furtherance thereof, filed a UCC–1 Financing Statement on September 26, 1996, covering substantially all of the Debtor's assets, specifically including general intangibles and after-acquired property. On April 25, 1997, the Debtor and Comerica Bank entered into a First Amendment to the Security Agreement.

On September 26, 1996, the Debtor entered into a Security Agreement with Brown & Caldwell, and in furtherance thereof, filed a UCC–1 Financing Statement on September 27, 1996, covering the same assets, subordinate to the lien of Comerica Bank. On February 3, 1998, A.M. Brown, Inc. merged into the Debtor pursuant to an Agreement and Plan of Merger between the Debtor and A.M. Brown, Inc. The Agreement and Plan of Merger provided for the retention of the Nutting Note by Alejandro Moreno or his designee.

On February 26, 1998, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, which was subsequently converted to a case under Chapter 7. On June 15, 1998, in support of the Debtor's Notice of Proposed Abandonment of Property and Deadline to File and Serve Objections Thereto (abandoning the Nutting Note and Rouse Guarantee), Alejandro Moreno, the Debtor's president, executed an Affidavit in support of the abandonment. In that affidavit, Alejandro Moreno

---

**1.** In the proceedings below, the parties entered into a Joint Stipulation of Undisputed Facts which sets forth facts upon which the bankruptcy court based its decision. The Trustee, however, contends there are additional facts which should be considered by the Court. This Court has reviewed the record and determined that the findings of fact in the Memorandum Decision adequately set forth the relevant, material facts necessary for a determination of this appeal and that in making its findings of fact, the bankruptcy court was not "clearly erroneous." Therefore, the Court adopts the bankruptcy court's findings of fact.

stated that the Nutting Note had been transferred to his parents, Bernardo and Marta Moreno, and that it had no value to the Debtor. Alejandro Moreno is also an officer of U.S. Biosystems.

On, July 2, 1998, this Court entered an Order Granting Relief from the Automatic Stay as to Comerica Bank and Brown & Caldwell. The Order states that Comerica Bank and Brown & Caldwell, and no other creditors, are granted relief from the automatic stay to exercise their rights to such collateral as is in accordance with state law.

On July 25, 1998, Comerica Bank and Brown & Caldwell entered into a Secured Parties Bill of Sale (the "Bill of Sale"), whereby Comerica Bank and Brown & Caldwell transferred and assigned to U.S. Biosystems, and the company accepted, all right, title and interest of the Debtor in and to the property described on "Exhibit A" to the Bill of Sale, subject to the interest of senior lienors and lessors. "Exhibit A" to the Bill of Sale included "all equipment, inventory, receivables, goods, fixtures and general intangibles."

On January 27, 2000 Plaintiff filed a Complaint to Determine Validity, Priority and Extent of Liens, to Avoid a Fraudulent and/or Preferential Transfer, for Turnover and an Accounting, and for Monies Owed. On March 21, 2000, U.S. Biosystems filed a Motion to Intervene as a defendant in the above-captioned Adversary Proceeding. On April 13, 2000 Defendants Bernardo and Marta Moreno were dismissed along with Counts II and IX of the above-captioned Adversary Proceeding.

*Summary of Issue On Appeal*

The determinative issue on appeal is whether the Nutting Note was, under Florida Statutes § 679.105, either a "negotiable instrument" or "instrument" as the

Trustee contends, or a "general intangible" as U.S. Biosystems contends. If it is a "negotiable instrument" or an "instrument," the creditors (Comerica Bank and Brown and Caldwell) would have had to possess the Nutting Note in order to perfect their security interests, which they did not. If the note were merely a "general intangible," the creditors properly secured their security interests by recording their respective U.C.C. statements. If the creditors properly perfected their security interests, they legally transferred their interests in the "general intangibles," including the Nutting Note, to U.S. Biosystems.

*Discussion*

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen,* at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to

defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Id.; see also Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996)(conclusory allegations and conjecture cannot be the basis for denying summary judgment).

In view of the summary judgment standard, the fact that both parties sought summary judgment, and the parties' Joint Stipulation which resolves all material facts, the Court deems that summary judgment is appropriate here. However, for the reasons discussed below, the Court disagrees with the bankruptcy court's legal conclusions and reverses the final judgment.

This case turns solely on the classification of the Nutting Note under Florida Statutes § 679.105; for if it is either an "instrument" or a "negotiable instrument," the creditors had no perfected security interests in it and could not have assigned the note to U.S. Biosystems. Conversely, if the note is a "general intangible," their security interests were properly perfected, in which case the assignments to U.S. Biosystems were effective. The note's classification, in turn, is determined by its terms and conditions, as well as the applicable Florida law. On this point Florida's Uniform Commercial Code provides the appropriate standard by which to classify the Nutting Note.

As a starting point, the Court looks to Florida Statutes § 673.1041(1), which defines a "negotiable instrument" as:

an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(a) Is payable to bearer or order at the time it is issued or first comes into possession of a holder;

(b) Is payable on demand or at a definite time; and

(c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . .

Florida Statute § 673.1041(2) goes on to state that the term "instrument" means a negotiable instrument. The term "instrument," in turn, is defined more broadly in Florida Statutes § 679.105(1)(g) to include not only a negotiable instrument as defined in § 673.1041, but also

any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment . . . .

■ A negotiable instrument is an unconditional promise to pay a fixed amount of money that may not contain any other promise, order, obligation, or power except as authorized by statute. *Ameritrust Co., N.A. v. White,* 73 F.3d 1553, 1559 (11th Cir.1996).

■ The Nutting Note is not an *unconditional* promise to pay. Its assignability is restricted and payment is contingent on several future conditions, including covenants not to compete and indemnity obligations and various potential credits based on several enumerated contingencies related to the contract terms, against the face amount otherwise due. Accordingly, the bankruptcy court properly concluded that the Nutting Note does not meet the narrower Florida Statutes § 674.1041(1) definition of a "negotiable instrument," or is at least not fully negotiable, because it may only be assigned to A.M. Brown, Inc., and

is "subject to all of the terms and conditions of that certain Contract of Sale and Purchase dated the 4th day of January, 1995, between Florida Testing and Engineering, Inc."

■ The next step in the analysis is to determine if the bankruptcy court properly determined whether the Nutting Note falls within the more expansive definition of an "instrument" as defined by Florida Statutes § 679.105(1)(g). On this issue, the Court notes that the bankruptcy court begins its extensive discussion with the finding that the Nutting Note is not such an "instrument." In making this finding, the bankruptcy court again relies on the fact that the note may only be assigned to A.W. Brown, Inc. and is subject to the terms of the Contract of Sale and Purchase. However, the bankruptcy court concludes its discussion on whether the note is an "instrument" with the finding that "[t]he Nutting Note cannot be classified as a *negotiable* instrument under the Florida Commercial Code" (emphasis added). The bankruptcy court then immediately begins its discussion of the "general intangible" category by repeating its conclusion that "the Nutting Note is not a *negotiable* instrument." The Court does not know whether these insertions of the term "negotiable" in the discussion concerning "instrument" were simply typographical errors or the bankruptcy court was actually limiting the term "instrument," as used in § 679.105(1), to the more restrictive term "negotiable instrument."[2] Moreover, in its brief discussion the bankruptcy court does not draw or analyze any distinction between the more restrictive "negotiable instrument" and the more expansive "instrument." Thus, the bank-

ruptcy court appears to be evaluating whether the Nutting Note is an "instrument" on the same factual and legal basis as that used in its "negotiable instrument" analysis. That is, since the note could only be negotiated or assigned to A.M. Brown, Inc. and was subject to the terms and conditions of the Contract of Sale and Purchase, it does not qualify as an "instrument."

More importantly, the bankruptcy court does not expressly consider what the drafter of § 679.105(1)(g) meant by defining an "instrument" as not only a negotiable instrument, but also as:

any other writing which evidences a right to the payment of money . . . and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment.

The bankruptcy court's failure to do so is most understandable in view of the parties' failure to bring to the bankruptcy court's attention or discuss the Florida Supreme Court's expansive definition of "instrument" set forth in *Citizens National Bank of Orlando v. Bornstein*, 374 So.2d 6 (Fla. 1979). In *Bornstein*, on a certified question from the former Fifth Circuit Court of Appeals, the Florida Supreme Court held that under Florida law the transfer of a nonnegotiable certificate of deposit was an assignment of a non-negotiable "instrument" which was entitled to secured transaction treatment under Florida's Uniform Commercial Code, notwithstanding that the certificate of deposit was non-assignable by its stated terms. *Id.* at 13.

The *Bornstein* Court rejected the same argument U.S. Biosystems made to the bankruptcy court—that restrictions on the

---

**2.** In its Answer Brief, at page 10, U.S. Biosystems quotes this same bankruptcy court conclusion but adds a "[sic]" after the word "negotiable." Thus, it appears that U.S.

Biosystems believes that the insertion of "negotiable" in the quoted finding is simply an oversight.

transfer of the payment instrument remove it from the purview of § 679.105(1)(g). The Court reasoned:

> If the code drafters had intended to exclude non-negotiable instruments from coverage under section 679.105(1)(g), they would not have added the underlined language in the definition, but would have limited it to include only "negotiable instruments" as was done in article 3.

374 So.2d at 9.

The Court held that the certificate of deposit was an "instrument" as defined in § 679.105(1)(g) rather than a "general intangible" under § 679.106, even though the certificate of deposit was non-assignable and non-negotiable. In doing so the Florida Supreme Court drew a meaningful distinction between the term "negotiable instrument" and the more expansive term "instrument." The Florida Supreme Court adopted the reasoning and holding found in *First National Bank in Grand Prairie v. Loan Star Life Insurance Co.,* construing "instrument" as defined by § 9.105(a)(9) [§ 679.105(1)(g) ]

> broadly to include any writing which, like a stock certificate or negotiable instrument, is treated as a token of the rights it represents and, therefore, is normally delivered to any person to whom the rights are transferred. The certificate in question resembles such instruments more than it resembles ordinary deposit accounts ... It is a writing which the holder must keep and present as evidence of its right, as its language expressly provides. It may easily be delivered by one party to another in the course of a commercial transaction.

*First National Bank in Grand Prairie,* 524 S.W.2d 525, 533–34 (Tex.Civ.App. 1975).

The *Bornstein* Court concluded:

We agree that the emphasized language in section 679.105(1)(g) should be interpreted broadly to encompass non-negotiable certificates of deposit. We do not consider the restrictions on assignability requiring consent of and recorded transfer by the Bank to exempt this certificate from the broad coverage of section 679.105(1)(g). We conclude that the certificate of deposit here is an "instrument" as described in the emphasized portion of section 679.105(1)(g) and that the assignment is therefore entitled to secured transaction treatment under article 9.

374 So.2d at 10.

Given the Florida Supreme Court's broad interpretation of "instrument," there appears to be no reason to legally distinguish between nonnegotiable certificates of deposit and nonnegotiable promissory notes with respect to § 679.105(1)(g) treatment. Indeed, the legal precedent upon which U.S. Biosystems most heavily relies on for its contention that restriction on assignability and negotiability of a payment instrument make the Nutting Note a general intangible rather than an instrument, *In re Cambridge Biotech Corporation,* 178 B.R. 34 (Bankr.D.Mass.1995), also involved a nonnegotiable, nontransferable certificate of deposit. There, the bankruptcy court, on facts materially the same as below, relied on Rhode Island law to reach the opposite conclusion from that reached by the Florida Supreme Court in *Bornstein.* Florida law, of course, guides this Court.

### Conclusion

Because the Court determines that, as a matter of law, the Nutting Note is an "instrument" under Florida law, the judgment in favor of U.S. Biosystems is reversed and this case is remanded to the bankruptcy court for entry of judgment in favor of the Trustee.

### ORDER DENYING APPELLEE'S MOTION FOR REHEARING AND GRANTING APPELLEE'S ALTERNATIVE MOTION FOR MODIFICATION OF MARCH 28, 2001 ORDER

THIS MATTER came before the Court upon the Appellee's Motion for Rehearing, or Alternatively for Modification of March 28, 2001 Order, and the Court having reviewed the Motion, reviewing the response filed thereto, reviewing the file, and being otherwise fully advised in the premises, it is

**ORDERED and ADJUDGED** as follows

1. Appellee's motion for rehearing of this Court's order of March 28, 2001 is denied.

2. Appellee's alternative motion for modification of the March 28, 2001 is granted. The paragraph titled "Conclusion," is withdrawn, and the following language is substituted in its place:

"Because this Court determines that, as a matter of law, the Nutting Note is an 'instrument' under Florida law, the judgment in favor of U.S. Biosystems is reversed, and judgment is entered in favor of the Trustee."