PER CURIAM.
We have for review the Referee’s report recommending that the Respondent, George M. Heller, be disbarred. Rule 11.09, Integration Rule of The Florida Bar, 32 F.S.A.
Respondent Heller had performed services for Pan American Surety Company, as one of its attorneys. By an order dated December 28, 1961, entered in receivership proceedings brought by the State Treasurer against Pan American, all attorneys representing the insurer were discharged. Subsequently, the Receiver learned that Respondent Heller had nevertheless continued to represent the insurance company in the appeal of the case of Barnett v. Pan American Surety Company. Accordingly, on September 14, 1962, Heller was retained to continue to prosecute the appeal on behalf of the Receiver for an agreed contingency fee of one-third of the amount collected.
Respondent Heller collected the sum of $4,610.00 from Barnett on behalf of Pan American, but failed to turn the money over to the Receiver. The Receiver filed a petition for rule to show cause to require Heller to account for and pay over the funds or show cause why he should not do so.
The Receiver also referred the matter to The Florida Bar for investigation. Although there was no absolute proof of misconduct or bad faith, this fact should not deter an investigation. The grievance procedure should be used as a shield as well as a sword, so that the reputation of reputable attorneys may be protected from false or unwarranted claims of misconduct, or spurious complaints concerning fees. The reasonableness of a fee should, in most instances, be a matter of civil litigation. The grievance procedure should not be used as a hammer to influence an attorney in settling a controversy with his client relating to the amount of his fee.
On May 31, 1966, Heller filed his response to the rule to show cause, wherein he acknowledged that he had collected the judgment in the Barnett case, but refused to pay the proceeds (less the fee) to the Receiver. Heller asserted a claim against Pan American in the amount of $10,600.18, which had not been paid and claimed a lien on the entire proceeds of the Barnett judgment as security for the payment of his claim against the Receiver for Pan American.
This matter of Heller’s lien was presented to the Circuit Judge, who ruled that he was not entitled to a lien on the funds recovered in the Barnett case, except for the agreed one-third fee. Heller was ordered to (1) immediately render an accounting to the Receiver of the funds recovered by him as attorney for the Receiver; and (2) immediately pay over the sum recovered in the Barnett case less the one-third fee.
Heller sought review of this decision and supersedeas bond was fixed in the amount due from Heller to the Receiver, plus one year’s interest at six per cent per annum.
Unfortunately, the insurance company named as surety on the supersedeas bond likewise went into receivership. Upon motion of the Receiver, the trial judge ordered and directed Heller to either post a substitute supersedeas bond or appear before the Court for determination of whether he should be held in contempt. Upon his failure to file a substitute supersedeas bond or appear, the Court ordered that a warrant of attachment of the person of Heller be issued and served according to law. It does not appear that Heller was ever served with the writ of attachment. He is presently residing in the State of Texas.
The final judgment of the Circuit Judge which refused to allow the lien and re *646 quired the accounting was affirmed by a per curiam decision of the District Court of Appeal. Heller v. State ex rel. Larson, 192 So.2d 501 (Fla.App.1st, 1966). Petition for writ of certiorari was denied by this Court. Heller v. State ex rel. Larson, 201 So.2d 461 (Fla.1967).
There is no evidence that Heller acted in bad faith in claiming his lien, when the matter was first presented to the Circuit Judge. The Florida Bar contends, however, that his conduct in failing to return the balance after final disposition of the case was such a conversion as to warrant disbarment.
Rule 11.02(4), Integration Rule of The Florida Bar, reads as follows:
“Money or other property entrusted to an attorney for a specific purpose is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorneys fees, and a refusal to account for and deliver over such property and money upon demand shall be deemed a conversion. This is not to preclude the retention of money or other property upon which the lawyer has a valid lien for his services or to preclude the payment of agreed fees from the proceeds of transactions or collections. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is extortionate or the demand is fraudulent.”
Heller may have initially entertained a bona fide belief that he had a valid lien on the proceeds received by him in the Barnett case which would justify his retention of the same. This was a justiciable issue and Heller was entitled to have the issue decided by a court of competent jurisdiction. However, when the original superse-deas bond was cancelled due to receivership of the surety company, and the appellate courts held that he did not have a valid retaining lien on the funds, Heller was under an absolute obligation to either post a substitute supersedeas bond or pay the money to the Receiver. He did neither and continued to withhold funds belonging to his client, the Receiver.
The formal complaint was filed against Heller by The Florida Bar on December 1, 1969, several years after the determination of his civil case upon appeal. At the final hearing on May 1, 1970, Heller did not appear although notified. An attorney appeared at the instance of Heller, but did not undertake to represent Heller at the hearing or in further proceeding. Testimony was taken and exhibits admitted in evidence.
By letter dated May 11, 1970, Heller advised the Referee that he was willing to settle the matter with the Receiver on the basis of $200 down and $200 per month. He reiterated that there was no bad faith on his part and stated, “I merely wish peace.” This letter was written from Texas and Heller included, as a part of his agreement for settlement, a request for temporary suspension of the contempt order so that “I could appear before you to defend myself, if necessary, without fear of arrest.” The Referee replied that he had no authority to act upon the" offer of settlement.
The Referee found that Heller had been guilty of the acts charged and that he did not retain in good faith the money collected by him for the account of the Receiver. Disbarment was recommended.
Heller did not appear in person at the proceeding before The Florida Bar. At the time, he was confronted with the probability of arrest under the writ of attachment issued in the contempt proceedings. His fear of incarceration or fine obviously prevented him from presenting any further evidence in the matter.
Disbarment is the extreme measure of discipline, but is sometimes necessary in order to maintain the special trust and confidence of the public in the legal profession. Disciplinary action is aimed at re *647 moving from the profession a person whose conduct has proven him unfit to be entrusted with the duties and responsibilities belonging to the office of attorney. See 3 Fla.Jur., Attorneys at Law, § 84. As stated in The Florida Bar v. Pahules, 233 So.2d 130 (Fla.1970):
“In cases such as these, three purposes must be kept in mind in reaching our conclusions. First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.” (p. 132)
We are • confronted here with the question of whether the ultimate conversion of the funds by Heller was in bad faith and an act of dishonesty. Even though there was a conversion, the fact that he originally acted in good faith is a mitigating circumstance which should be considered. Also, the propriety of the order holding Heller in contempt for failure to appear or file a substitute supersedeas bond is questionable. The existence of the contempt judgment and writ of attachment necessarily hindered him in the presentation of a defense.
The circumstances of this case distinguish it from The Florida Bar v. Burton, 218 So.2d 748 (Fla.1969), and The Florida Bar v. Champlin, 222 So.2d 185 (Fla.1969).
It is ordered that the respondent George M. Heller be suspended from the practice of law for a period of one year from the date of the filing of this opinion and thereafter until satisfactory arrangements are made with the Insurance Commissioner for full satisfaction of the claim against respondent. It is so ordered.
CARLTON, Acting C. J., and ADKINS, BOYD, McCAIN and DEKLE, JJ., concur.