**ADAMS, GEORGE, LEE, SCHULTE, & WARD, P. A., Plaintiffs-Appellants, Cross-Appellees,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION et al., Defendants-Appellees, Cross-Appellants.**

**No. 77–1650.**

United States Court of Appeals, Fifth Circuit.

June 22, 1979.

Rehearing Denied Aug. 9, 1979.

Robert C. Ward, Amy Shield Levine, Miami, Fla., for plaintiffs-appellants, cross-appellees.

James F. Comander, Eugene Heiman, Miami, Fla., for defendants-appellees, cross-appellants.

Before TUTTLE, TJOFLAT and HILL, Circuit Judges.

TUTTLE, Circuit Judge:

This is one of those rare cases in which a law firm sues its client for attorneys' fees. The case is complicated by the fact that the attorney plaintiffs retained possession, under what they call a "retaining lien," of $300,000 in cash which they recovered for the client, against a claimed fee of $75,000. It is further complicated by the fact that they kept the client's money in a non-interest-bearing "trust account" and now claim a right to interest on the fee awarded them from the time it was earned until the date of the district court's judgment.

The plaintiffs, Adams, et al., P.A., were employed by defendant Westinghouse to file a suit against a Florida contractor and his insurers for damage done to Westinghouse equipment while in transit in Florida. Westinghouse had filed a previous suit in Chicago, but thought it desirable to have Florida counsel file this particular action in

order to prevent the running of the statute of limitations in the event of lack of success in the earlier action.

The suit was terminated by the payment by each of three insurers of the limits of their liability, totalling $300,000. This amount was placed in the firm's trust account.[1] This handling of the fund was done unilaterally without the consent of Westinghouse. The latter was notified by a proposed closing agreement on June 24, 1975, that plaintiffs were holding the sum subject to the payment of their claimed "reasonable" fee of $75,000. This amount was based upon the plaintiffs' contention that the normal fee for the filing of what they called a subrogation suit would have been one-third of the recovery, but since they were forwarding counsel in the case, plaintiffs reduced the claim to $75,000, or twenty-five percent of the recovery.

After some exchange of correspondence, Westinghouse made a demand on the plaintiffs for $300,000 with interest, stating that the attorneys' claim for a fee was a separate and distinct issue, the existence of which did not warrant their retention of the proceeds of the settlement.

During the course of the correspondence between the parties, Adams, et al., offered to place the settlement amount in an interest bearing account if agreed to by Westinghouse. This agreement was not forthcoming.[2]

When the case came on for trial, the court found that there was no agreement for a contingent fee; that, therefore, the law firm would be entitled to a reasonable fee. The court stated: "Plaintiff is not entitled to recover an attorney's fee on a contingent fee basis, but on the basis of time expended, the nature of the services rendered, the responsibilities assumed, the complexity of the case, the amount involved, the results obtained, and the other considerations set forth in the Code of Professional Responsibility." The court found such a fee to be $55,000.

The court also found that it was improper for plaintiffs to retain more than the amount of their claimed fee of $75,000 from the amount of the settlement and that the plaintiffs were obligated to remit immediately at least $225,000 to Westinghouse. The court determined that the failure of the plaintiffs to place the $300,000 in safe obligations bearing at least six percent interest obligated them to pay interest at six percent on the sum of $225,000 from the date of the demand on January 21, 1976, until the court by a supplementary order on January 28, 1977, caused the funds to be deposited in the registry of the court and subsequently to be paid to the defendants.

The trial court made no provision for interest on the sum of $55,000 for which it entered judgment in favor of the plaintiffs.

Adams, et al., bring this appeal, claiming that they have been improperly charged with interest on that part of the client's fund which exceeded the maximum claim they were making for a fee and contending that they were entitled to interest on the $55,000 fee from the date it was earned, rather than only from the date of the final judgment.

Westinghouse claims that the action of the law firm in keeping its $300,000 settlement money after demand was made for it amounted to a conversion of its funds and was such unconscionable conduct as to deprive the law firm of the right to any fee, and that even if such a fee was allowable, Westinghouse was entitled to have interest on the excess of $225,000 and should not be held liable for interest on the $55,000 fee.

Briefly stated, the law firm claims that it has what is known as a "general or retaining lien," which it says operates on any property in its hands that belongs to a

---

1. We are in no way enlightened as to what constitutes such an account. So far as the record appears, such an account could be either an interest bearing or non-interest-bearing account. In actuality, it was an account that did not bear interest.

2. While it does not appear why this agreement was not made, Westinghouse may well have thought that its agreement to place the funds in an interest bearing account would validate its retention by the law firm, which it did not intend to agree to.

client who owes it any amount of money, no matter how valuable the property held or how small the amount of the claim. This lien is distinguished from a "charging lien" which arises when counsel obtains property or collects money in litigation and claims a lien for services in creating the fund. A principal distinction between these types of liens is that the retaining lien cannot be foreclosed whereas the charging lien can. Plaintiffs frankly contend that the value of the retaining lien is that it gives them great leverage by creating "embarrassment" to the client who is unable to get any part of its money until the relatively small part owed to the lawyers has been agreed upon. They cite a district court opinion for this proposition. In dictum, the United States Court for the Southern District of Florida stated: "Its [the retaining lien's] value to the attorney is only in proportion to the extent that such retention by him will embarrass the client." *Cooper v. McNair*, 49 F.2d 778 (S.D.Fla.1931). They also cite a New Jersey case which says: "the effectiveness of the lien is proportionate to the inconvenience of the client in being denied access to his property." *Brauer v. Hotel Associates, Inc.*, 40 N.J. 415, 192 A.2d 831, 835 (1963).

However, appellants cite no Florida case which even approaches the degree of coercion that is represented by the facts here. Nor, in fact, do they cite any Florida case which recognizes the right of a lawyer to retain money under a retaining lien in excess of the actual amount of the maximum claim which he makes against the client.

No such lien is recognized under federal common law. We therefore look to the state law to determine whether it condones what otherwise would be a conversion by the lawyer of property belonging to his client. In *Hoxsey v. Hoffpauir*, 180 F.2d 84 (5th Cir. 1950), this court said:

> It is the general rule that while the Federal law provides no such remedy, Federal Courts sitting in a State enforce that State's statutes creating attorney's liens. *Webster v. Sweat*, 5 Cir., 65 F.2d 109; *Brooks v. Mandel-Witte Co.*, 2 Cir., 54 F.2d 992, 994, and citations.

180 F.2d at 86. The same rule obtains when such a lien is provided for under the common law of a state instead of by statute. *See Webster v. Sweat, supra.*

A Florida case that most nearly answers the question presented here is *Florida Bar v. Heller*, 248 So.2d 644 (Fla.1971). That case, while it appears to erase the distinction between what under the common law of some states constituted a retaining lien as contrasted to a charging lien, speaks clearly on the issue before us. It was an original proceeding to review a referee's report recommending disbarment of a Florida lawyer, Heller. Heller had collected the sum of $4,610 on behalf of a client, Pan American Surety. He retained the money, claiming not only that he was entitled to one-third of the amount as a fee for its collection, but that he also had a claim of $10,600.18 for other services. In the words of the Florida Supreme Court, he "claimed a lien on the entire proceeds of the Barnett judgment as security for the payment of his claim against the receiver for Pan American." The matter of Heller's lien was presented to a Florida circuit judge who ruled that Heller was not entitled to a lien on the funds recovered in the Barnett case, except for the agreed one-third fee. This decision was affirmed by a per curiam decision of the district court of appeal. *Heller v. State ex rel. Larson*, 192 So.2d 501 (Fla. App.1966). A petition for certiorari was denied by the Florida Supreme Court, *Heller v. State ex rel. Larson*, 201 So.2d 461 (Fla.1967). Pending the appeal to the district court of appeal, Heller's supersedeas bondsman became insolvent and Heller failed to post a substitute bond or pay the money to the receiver. Thereafter, a formal complaint was filed against him by the Florida Bar. Dealing with this matter, the Supreme Court of Florida said:

> when the original supersedeas bond was cancelled due to receivership of the surety company, *and the appellate courts held that he did not have a valid retaining lien on the funds*, Heller was under an absolute obligation to either post a

substitute supersedeas bond or pay the money to the Receiver. He did neither and continued to withhold funds belonging to his client, the Receiver.

248 So.2d at 646 (emphasis added).

██ Thus, the Florida Supreme Court, although denying certiorari in Heller's first appeal from the district court of appeal decision, made it apparent in the subsequent disbarment proceedings that it fully recognized that the court of appeal had held "that [Heller] did not have a valid retaining lien on the funds." We conclude, therefore, that under Florida law an attorney is not permitted to withhold payment to a client of his money over and above the maximum amount of the attorney's claim against the client. In the present case, therefore, such retention of the sum of $225,000 after demand by the client amounted to a conversion of the client's money.

██ Since the appellant's withholding of the excess amount was not justified, this warranted the trial court's decision to require the attorneys to pay interest on the retained amount.

██ The appellants also claim that under Florida law, attorney's fees, unlike other unliquidated demands, bear interest from the date payment is due to the date of judgment, citing *Huntley v. Baya*, 136 So.2d 248 (Fla.App.1962). The difficulty with plaintiffs' position is that they had the funds in their possession during the entire period of time and, as we view the appropriate rule of the Florida Bar,[3] it would have been entirely proper for the plaintiffs to have retained the amount they claimed for their attorneys' fees in an interest bearing account pending final resolution of the correctness of the claim. The plaintiffs having

unilaterally taken custody of the funds, it would be wholly illogical to determine that the client should pay them interest for the amount ultimately established as being due them.

██ As to Westinghouse's cross-appeal that the amount of the fee was inadequately considered by the trial court and that the court's determination was not expressly based upon the twelve factors for determining the amount of attorneys' fees mentioned by this court in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), we conclude the point is not well taken. *Johnson* dealt with the discretionary award of attorneys' fees to a prevailing party in a Title VII suit as authorized by 42 U.S.C. § 2000e–5(k). What is involved here is not a discretionary fee awarded to allocate the costs of litigation among parties, but the valuation of an obligation agreed to by attorney and client, the subject of the litigation. *Cf. Wolf v. Frank*, 555 F.2d 1213, 1214 (5th Cir. 1977) (*Johnson* prescribes valuation of fees "for services rendered in those cases where the law authorizes the allowance of discretionary fees"). Second, the right to a fee here arises not out of federal statutes or equitable practice but out of the Florida provision for reasonable attorneys' fees when services by counsel are furnished at the client's request but no contract has been made with respect to the amount of fees. Under such circumstances, we think the trial court properly measured the reasonable value of the attorneys' services and translated this into a dollar amount in light of the factors specified in the Code of Professional Responsibility.

██ We do not seriously consider the cross-appellant's contention that the wrong-

---

**3.** Rule 11.02(4), Integration Rule of the Florida Bar reads as follows:

Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney fees, and a refusal to account for and deliver over such property and money upon demand shall

be deemed a conversion. This is not to preclude the retention of money or other property upon which the lawyer has a valid lien for his services or to preclude the payment of agreed fees from the proceeds of transactions or collections. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate or the demand is fraudulent.

ful retention of its money by the law firm deprived the latter of its entitlement to any fee whatever. Such a holding would have to be in the exercise of a trial judge's equitable discretion, if available to the appellant at all. We consider that the trial court properly concluded that a fee of $55,-000 properly should be awarded in this case.

The judgment is AFFIRMED.

JAMES C. HILL, Circuit Judge, dissenting:

With great deference for my brethren in the majority, I cannot concur in their disposition of this appeal. I write briefly to explain my dissent.

The confrontation this case presents seems typical of other such hostilities which arise when close relationships of trust and confidentiality break-up. The property line dispute between two long-time neighbors and the hotly contested divorce of two long-time marrieds often raise passions of the same intensity as arise when attorney and client end their professional relationship and there must be an accounting of the litigation proceeds of their shared victory. Those who once faced a common adversary together now face each other. When the smoke and din of this pitched battle clears, there remains only a finespun question of law which cannot possibly be answered to everyone's complete satisfaction. The controlling issue presented here is whether the law of Florida recognizes the right of an attorney to retain funds under a retaining lien in excess of the actual amount of the maximum claim which the attorney makes against the client. Because I am not satisfied that the law of Florida is clearly settled, but not because I would have this Court reach one result over another, I dissent.

The majority is correct to note that appellants cite no Florida case which recognizes the right of a lawyer to retain money under a retaining lien in excess of the maximum claim which is made against the client. I do note that Appellees cite no Florida case which specifically forbids such a practice, and I have not found one among modern precedents or the ancient authorities there cited.[1] The fundamental issue has not been definitively resolved by the sovereign courts of Florida.

The majority relies much upon *Florida Bar v. Heller*, 248 So.2d 644 (Fla.1961). I cannot. As the majority notes, that matter was an original proceeding to review a referee's report recommending Heller's disbarment. Heller had represented Pan American Surety Company. Though an order was entered in receivership discharging all of Pan American's attorneys, Heller continued to represent the company in an appeal. When the Receiver learned of this continued representation, Heller was retained to continue to prosecute the appeal on behalf of the Receiver for an agreed one-third contingency fee. Heller collected $4,610 on behalf of Pan American but failed to turn the money over to the Receiver. The Receiver filed a petition for an order to require Heller to pay over the funds or show cause why he should not do so. In his response, Heller acknowledged that he had collected the $4,610, but he refused to turn over the recovery, less the fee, to the Receiver. He retained the money based on his one-third contingency fee claim and a claim against Pan American for $10,600.18 in fees which had not been paid him. The Circuit Judge ruled that Heller was not entitled to a lien on the $4,610, except for the agreed one-third contingency fee. The Circuit Judge ordered Heller to render an immediate accounting to the Receiver and turn over the recovery less the one-third fee. Heller filed an appeal and a supersedeas bond was fixed. When the insurance com-

---

1. *See, e. g., Chancey v. Bauer*, 97 F.2d 293 (5th Cir. 1938); *Cooper v. McNair*, 49 F.2d 778 (S.D.Fla.1931); *Winn v. City of Cocoa*, 75 So.2d 909 (Fla.1954); *Scott v. Kirtley*, 113 Fla. 637, 152 So. 721 (1933); *Alyea v. Hampton*, 112 Fla. 61, 150 So. 242 (1933); *Goethel v. First Properties International, Ltd.*, 363 So.2d 1117 (Fla.App.1978); *Herold v. Hunt*, 327 So.2d 240 (Fla.App.1976); *Prunty v. State*, 226 So.2d 448 (Fla.App.1969); *Baya v. Price*, 222 So.2d 253 (Fla.App.1969); *Wilkerson v. Olcott*, 212 So.2d 119 (Fla.App.1968); *St. Ana v. Wheeler Mattison Drugs, Inc.*, 129 So.2d 184 (Fla.App.1961); *Cristiani v. Cristiani*, 114 So.2d 726 (Fla.App.1959); *Billingham v. Theile*, 107 So.2d 238 (Fla.App.1958).

pany named on the supersedeas bond went into receivership, the Circuit Judge ordered that Heller either post a substitute supersedeas bond or appear before the Circuit Court for a determination of whether he should be held in contempt. Because Heller was by then residing in Texas, a warrant of attachment of the person, issued when he took no action, was never served. The First District Court of Appeal affirmed the final judgment which refused to allow the lien and required an accounting. The brief *per curiam* opinion merely states the result, without more. *Heller v. State ex rel. Larson*, 192 So.2d 501 (Fla.App.1966). The Supreme Court of Florida denied a petition for a writ of *certiorari*. *Heller v. State ex rel. Larson*, 201 So.2d 461 (Fla.1967).

The focus of the Supreme Court of Florida was on the formal Bar disciplinary proceedings. The issue was narrowed by the Florida Bar, the complainant:

There is no evidence that Heller acted in bad faith in claiming his lien, when the matter was first presented to the Circuit Judge. The Florida Bar contends, however, that his conduct in failing to return the balance after final disposition of the case was such a conversion as to warrant disbarment.

248 So.2d at 646. With this narrow assertion on this equally narrow issue, the Supreme Court of Florida agreed:

Heller may have initially entertained a bona fide belief that he had a valid lien on the proceeds received by him in the [Pan American appeal] which would justify his retention of the same. This was a justiciable issue and Heller was entitled to have the issue decided by a court of competent jurisdiction. However, when the original supersedeas bond was cancelled due to receivership of the surety company, and the appellate courts held that he did not have a valid retaining lien on the funds, Heller was under an absolute obligation to either post a substitute supersedeas bond or pay the money to the

Receiver. He did neither and continued to withhold funds belonging to his client, the Receiver.

*Id.* The Supreme Court of Florida ordered Heller suspended from the practice of law for a period of one year.

From this opinion, the majority concludes:

Thus, the Florida Supreme Court, although denying certiorari in Heller's first appeal from the district court of appeal decision, made it apparent in the subsequent disbarment proceedings that it fully recognized that the court of appeal had held 'that [Heller] did not have a valid retaining lien on the funds.'

Majority opinion at 574. This may be the meaning of this opinion. Perhaps, as the majority concludes, "under Florida law an attorney is not permitted to withhold payment to a client of his money over and above the maximum amount of the attorney's claim against his client." *Id.* On the other hand, perhaps Florida courts still recognize the retaining lien device but held that Heller did not make out a case because there was a specific agreement for a one-third fee or because the retaining lien only applies to papers in the possession of the attorney or because of some other, unexplained reason. I do not know. More importantly, I am not convinced that the majority does know or can know. The precedential force of the *Heller* case is simple. It is limited by the Supreme Court of Florida's own understanding of the issue presented as I have already quoted: whether Heller's failure to return the money *after final disposition* of his lien claim was such a conversion as to warrant disbarment. This is all that was decided. The majority reads the opinion to decide more, or at least in *obiter dictum* to decide more. Upon such a Pythian precedent, I cannot rely.[2]

Through the combined processes of Diversity of Citizenship Jurisdiction, 28 U.S.C.A. § 1332, and Removal of Cases from State Courts, 28 U.S.C.A. § 1441, a federal forum

---

**2.** The Greek god Apollo made his will known through a medium at Delphi, the famous Delphic Oracle, who was called the Pythia. When Apollo's advice was sought, the Pythia descended into the oracular vault of the temple, the innermost sanctuary, where she took her position on a tripod. The Pythia was attended by a priest-interpreter, an exegete. Next, the

is the unlikely battleground for these litigants in a case involving a question of peculiar State concern. This appeal involves a consideration of the rights of members of The Florida Bar vis-a-vis their clients in fee disputes. The orderly functioning of the State Bar and the tradition of deference owed the State judiciary in such matters seemingly would require that the State Courts resolve such disputes and evolve the governing rules. Because such a course is available and because I believe that under "Our Federalism" [3] it is the best course to follow, I cannot join in the Court's holding today. I would certify the question to the Supreme Court of Florida.[4]

chamber was filled with the fumes of burned barley, hemp and laurel leaves, and the Pythia fell into a trance. When the priest questioned her, she talked incoherently. The priest took down what she said and her response was turned over to yet another priest who issued the final form of the oracle. There was yet another priest who explained the obscurities of the god's response. *See generally Mayerson, Classical Mythology in Literature, Art, and Music* 123–24 (1971).

Not being as well-versed in Apollonian doctrine as the majority, I would not serve as exegete here. I would ask Apollo directly and certify the question.

**3.** I borrow Mr. Justice Black's heartfelt phrase. *Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**4.** The much-extolled certification procedure is available here. *See, e. g., Bornstein v. Citizens National Bank of Orlando,* 564 F.2d 721 (5th Cir. 1977); *Pokorny v. First Federal Savings and Loan Association of Largo,* 563 F.2d 763 (5th Cir. 1977); *Phillips v. Iglehart,* 558 F.2d 737 (5th Cir. 1977).