534 So.2d 1187 (1988)
COUNTRY MANORS ASSOCIATION, INC., William B. Beedenbender, Charles L. Wright, James H. Carmichael, Walter Claus, Richard Corriston, Charles Soelch, Edward S. Perschbach, George J. Bonagura, Thomas Yott, Fred Papavero, James D. Cameron, Howard D. Turner, Thomas A. Eitner, Francis L. Davies, Leo J. Cody, Nathan Kupperman, Joseph Vedelli, Alfred Perrin, Louise Hood, Albert Morrison, Richard Birr, Adrian McManus, Joseph Hay, Harry Baker, Raymond Gabel, Henry Pierro, Joseph Schwartz, George LaLonde, Robert French, and International Insurance Company, Appellants/Cross Appellees,
v.
MASTER ANTENNA SYSTEMS, INC., Appellee/Cross Appellant.
INTERNATIONAL INSURANCE COMPANY, Appellant,
v.
COUNTRY MANORS ASSOCIATION, INC., and Master Antenna Systems, Inc., Appellees.
Nos. 4-86-0400, 4-86-0445.
District Court of Appeal of Florida, Fourth District.
November 16, 1988.
Rehearing and Certification Denied January 12, 1989.
*1189 Karen A. Gagliano of Lavalle, Wochna, Raymond & Rutherford, P.A., Boca Raton, for Country Manors Ass'n, Inc., et al.
*1190 Earl G. Gallop and Joshua D. Lerner of Karon, Morrison & Savikas, Miami, for International Ins. Co.
Peter J. Aldrich and Stephen A. Rapp of Gunster, Yoakley, Criser & Stewart, P.A., West Palm Beach, for Master Antenna Systems, Inc.
GUNTHER, Judge.
This is an appeal of consolidated cases. In the first appeal (# X-XX-XXXX), Country Manors Association, Inc., a condominium association, and various of its directors, appeal from an Amended Final Judgment entered in favor of Master Antenna Systems, Inc., an Order awarding attorney's fees and a Final Judgment determining insurance coverage. Master Antenna Systems, Inc., a cable television provider, also asserts one error by the trial court in a cross appeal. The second appeal (# X-XX-XXXX) was filed by International Insurance Company, the insurer of the condominium association and its directors, from an Order and Final Judgments determining insurance coverage for the torts committed by Country Manors Association, Inc. and its directors.
In 1982, Country Manors Association, Inc. (Association), commenced a declaratory judgment action against Master Antenna Systems, Inc. (Master Antenna). The principal issue in that action was ownership rights of a master antenna system installed by Master Antenna at Country Manors Condominium. Subsequently, on March 1, 1983, Master Antenna filed its first counterclaim against the Association.
On March 28, 1983, the declaratory judgment action and Master Antenna's counterclaim were bifurcated. The declaratory judgment action was tried first and appealed resulting in this court's decision declaring Master Antenna the owner of the master antenna system at Country Manors Condominium but also finding that the Association had legally cancelled Master Antenna's use of an express easement to service the system. Country Manors Association v. Master Antenna Systems, Inc., 458 So.2d 835 (Fla. 4th DCA 1984).
In February 1984, Master Antenna amended its counterclaim to include as counterdefendants the directors of the Association. Also, International Insurance Company (International) was named as a counterdefendant based upon its issuance of an insurance policy covering the directors of the Association for the period of June 24, 1980 to June 24, 1983, and an insurance policy covering the Association and its directors for the period of June 24, 1983 to June 24, 1986. In May 1984, while the appeal of the declaratory action was still pending, Master Antenna filed its Third Amended Counterclaim against International, the Association and its directors alleging tortious interference with contract between Master Antenna and Perry Cable Company (Count I), tortious interference with contract between Master Antenna and Fairbanks Cable of Florida, Inc./Leadership Cable Company (Count II), conversion (Count III) and civil theft (Count IV). When the action on the counterclaims went to trial, the trial court granted the Association and its directors' Motion for Directed Verdict as to the claim of tortious interference with contract with Fairbanks Cable of Florida, Inc./Leadership Cable Company (Count II). However, the claims of tortious interference with contract with Perry Cable Co. (Count I), conversion (Count III) and civil theft (Count IV), were submitted to the jury resulting in a verdict against the Association and its directors. Ultimately, an Amended Final Judgment dated April 14, 1986, was entered against the Association, its directors and International. An Order awarding Master Antenna attorney's fees in the amount of $109,595.00 had been entered on January 17, 1986. Also, prior to the entry of the Amended Final Judgment, the trial court ruled on the issues of insurance coverage in the Final Judgments dated December 3, 1985, and January 31, 1986. In essence, the case was resolved in the following manner:

Count I Tortious Interference with contract between Master Antenna and
 Perry Cable. Master Antenna awarded:
 compensatory damages
 against all counterdefendants  $156,375.00
 punitive damages against
 the Association  80,000.48
*1191 prejudgment interest  83,004.48
 ___________
 $319,379.96
Count II  Tortious Interference with contract between Master Antenna and
 Fairbanks Leadership Cable Co. Directed Verdict for Country
 Manors.
Count III  Conversion of antenna system. Master Antenna awarded:
 compensatory damages
 against all counterdefendants  $180,000.00
 punitive damages against
 the Association  150,000.00
 punitive damages against
 Robert French  10,000.00
 prejudgment interest  64,861.00
 ___________
 $404,861.00
Count IV  Civil Theft of antenna system. Master Antenna awarded the
 following against the Association and Robert French:
 treble damages  $540,000.00
 ($180,000 X 3)
 prejudgment interest  64,861.00
 attorney's fees  109,595.00
 ___________
 $714,456.00

The Amended Final Judgment also provided that any recoveries made by Master Antenna against any of the counter-defendants under the claims of tortious interference with contract with Perry Cable Co. (Count I) and conversion (Count III) shall be used as an offset and a pro rata reduction of the Judgment entered under the claim of civil theft (Count IV). The Order awarding attorney's fees, the Final Judgment determining insurance coverage for punitive damages, and the Amended Final Judgment are appealed in case # X-XX-XXXX.
The Final Judgments determining insurance coverage, appealed in case # X-XX-XXXX, determined that insurance coverage existed for compensatory damages awarded for tortious interference with contract (Count I), conversion (Count III), and treble damages for civil theft (Count IV), but that no coverage existed for punitive damages awarded under the tortious interference of contract claim (Count I) and conversion (Count III).
International also appeals the Order dated May 2, 1986, holding that the claims-made insurance policy for the period of June 24, 1983 to June 24, 1986, between the Association, its directors and International is the policy covering the liability litigated in this dispute.
In summary, on appeal # X-XX-XXXX, the Association, its directors and Robert French appeal the Amended Final Judgment entered in favor of Master Antenna, the Order awarding attorney's fees and the Final Judgments determining insurance coverage. Master Antenna cross appeals on the Order awarding attorney's fees. On appeal # X-XX-XXXX, International appeals from an Order determining that the claims-made insurance policy for the period of June 24, 1983 to June 24, 1986, provides coverage where applicable, and Final Judgments determining insurance coverage.
In the first appeal (# X-XX-XXXX), the Association and its directors raise three points concerning sufficiency of the evidence. These counterdefendants argue that at trial there was insufficient evidence to support the jury verdicts of tortious interference of contract, conversion and civil theft, as well as insufficient evidence to support an award of punitive damages for tortious interference with contract and conversion. We hold that these counter-defendants have waived appellate review of all three sufficiency of the evidence issues because the trial attorney failed to renew his motion for directed verdict at the close of all the evidence at trial. One must move for a directed verdict at the end of all the evidence or one waives the right to make that motion. Prime Motor Inns, Inc. v. Waltman, 480 So.2d 88, 90 (Fla. 1985). An appellate court is powerless to review the sufficiency of the evidence to support the verdict if the appellant made no motion for a directed verdict. Fee, Parker & Lloyd, P.A. v. Sullivan, 379 So.2d 412, 418 (Fla. 4th DCA), cert. denied, 388 So.2d 1119 (Fla. 1980). We also conclude that this case does not fit the only exception to the requirement of renewing a motion for directed verdict at the end of all the evidence. The only exception is where the insufficiency of the evidence constitutes plain error apparent on the face of the record which if not noticed will result in a manifest miscarriage of justice. Id.
The dissent suggests that plain error exists on the face of the record because the facts of this case do not support a finding *1192 of civil theft or conversion. However, the facts do in fact support such a finding.
Section 812.014(1), Florida Statutes (1987), sets forth the elements of theft:
A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
Furthermore, to establish an action for civil theft, one must show criminal intent. St. John v. Kuper, 489 So.2d 833 (Fla. 3d DCA 1986). Criminal intent is defined in section 812.014, Florida Statutes (1987), as the intent to "temporarily or permanently" deprive or appropriate the property of another. The Florida Supreme Court has interpreted this section to require only the "intent to deprive," rather than the "intent to permanently deprive." State v. Dunmann, 427 So.2d 166 (Fla. 1983).
In the instant case, one of the Directors of Country Manors testified that Country Manors believed the system belonged to Master Antenna, but Country Manors wanted to control the system and therefore took control of the system. At some point, Country Manors disconnected parts of the system and moved it into storage. However, even if Country Manors did not consider itself the owner of the removed portions of the system, Country Manors did consider itself the owner of any parts of the system which were in the ground or in the walls of units. An Association Director testified that he would not have permitted Master to take the underground or wall cables after January 1983.
Country Manors posted a memo on its bulletin boards instructing its residents to call the police if Master Antenna came onto the property. Further testimony revealed that this was done to prevent Master Antenna from touching the system. Country Manors admitted that it did not pay for the use of parts of the system after January of 1983. These facts support a finding of civil theft.
The record also supports a finding of conversion. In the dissent, Judge Stone argues that the facts adduced at trial did not support a finding of conversion, because Master Antenna did not "demand" the return of the system. However, a conversion can be shown without a demand. Senfeld v. Bank of Nova Scotia Trust Co., 450 So.2d 1157 (Fla. 3d DCA 1984).
Thus, the alleged insufficiency of the evidence in the instant case does not constitute plain error apparent on the face of the record which if not noticed will result in a manifest miscarriage of justice. Id. Accordingly, we affirm the sufficiency of the evidence issues on appeal.
The Association next raises the issue of whether the trial court erred in holding that there was no insurance coverage for punitive damage awards against it under the tortious interference of contract claim (Count I), and the conversion claim (Count III). It is clear that public policy prohibits insurance coverage of punitive damages. U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061, 1064 (Fla. 1983). However, insurance coverage for punitive damages is not precluded when the insured himself is not personally at fault, but is merely vicariously liable for another's wrong. Id. It is axiomatic "that a corporation can only act through its officers and agents... ." Kent Insurance Company v. Schroeder, 469 So.2d 209, 210 (Fla. 5th DCA 1985), quoting from, Browning v. State, 101 Fla. 1051, 133 So. 847, 848 (1931). In the instant case, it was the conduct of the directors acting in their capacity to represent the Association that gave rise to the punitive damages claim. Thus, by virtue of their position as directors of the Association, their acts are indistinguishable from the acts of the corporation itself. Id. Since the Association's liability is direct and not vicarious, public policy precludes insurance coverage for punitive damages. Accordingly, we affirm this issue because the trial court was correct in finding that there is no insurance coverage for the awards of punitive damages *1193 against the Association or its directors.
The counterdefendants also argue on appeal that the trial court failed to require an election of remedies by Master Antenna prior to entry of the Final Judgment. We affirm because the Amended Final Judgment specifically provides that any amounts recovered under the tortious interference of contract claim (Count I) and the conversion claim (Count III) shall be used as a setoff against amounts owed under the civil theft claim (Count IV), and that the total amount recoverable by Master Antenna shall be the amount of the judgment entered under the civil theft claim (Count IV). Consequently, there is no double recovery by Master Antenna.
We affirm the award of attorney's fees in the amount of $109,595.00. There is competent substantial evidence in the record to support the trial court's finding that the fee arrangement between Master Antenna and its attorneys was a contingency fee arrangement as contemplated by Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). Rowe states:
Because the attorney working under a contingent fee contract receives no compensation when his client does not prevail, he must charge a client more than the attorney who is guaranteed remuneration for his services. When the prevailing party's counsel is employed on a contingent fee basis, the trial court must consider a contingency risk factor when awarding a statutorily-directed reasonable attorney fee.
472 So.2d at 1151.
Master Antenna's attorney testified at the attorney's fees hearing that at no time had the attorneys been paid for their work on the counterclaim action, and that an oral agreement between Master Antenna and its attorneys existed which required Master Antenna to pay a guaranteed minimum attorney's fee of $35,000 only if Master Antenna prevailed on the counterclaim action. Consequently, there existed a risk factor as contemplated by Rowe because the attorneys would receive nothing if Master Antenna did not prevail on the counterclaim action. We hold that the trial court was correct in finding that the arrangement in this case was a contingency fee agreement as contemplated in Rowe.
In contingent fee cases, Rowe states that the lodestar figure is entitled to enhancement by an appropriate contingency risk multiplier in the range from 1.5 to 3. Id. The appropriate multiplier is two when the likelihood of success is approximately even at the outset. Id. The trial court here found that the likelihood of success was even at the outset of the counterclaim. The parties do not contest this finding. Accordingly, since a contingency fee agreement exists in the instant case and the likelihood of success was even at the outset, we hold the trial court's use of a multiplier of 2 was correct.
In addition, the trial court was correct in its calculation of the lodestar at $54,797.50. The trial court properly took into account an earlier order limiting the recovery of attorney's fees to the claim of civil theft (Count IV). We agree that in the determination of the lodestar in this case, the trial court properly looked to the number of hours reasonably expended by plaintiff's counsel in prevailing on the civil theft claim (Count IV), which in this case included preparation for all the other counts as well. We find that there was competent substantial evidence to support the trial court's implied finding that these counts "were so inextricably intertwined that preparation of one count could not, as a practical matter, be separated from the preparation of the other count." Bill Rivers Trailers, Inc. v. Miller, 489 So.2d 1139 (Fla. 1st DCA 1986). The trial court did not err by including in its calculation of reasonable number of hours spent in preparation of the civil theft claim, those hours spent in preparation of the claim of tortious interference of contract with Fairbanks Cable of Florida/Leadership Cable Co. (Count II) which was dismissed by directed verdict. Again, there was competent substantial evidence to support the trial court's implied finding that the preparation of the civil theft claim could not be separated from the *1194 preparation of all the other counts, including the claim not prevailed upon. See Bill Rivers, 489 So.2d 1139. Additionally, in Rowe, the court held that:
When a party prevails on only a portion of the claims made in the litigation, the trial court must evaluate the relationship between the successful and unsuccessful claims and determine whether the investigation and prosecution of the successful claims can be separated from the unsuccessful claims.
472 So.2d at 1151. In this case, the record indicates competent substantial evidence to support the decision of the trial court to treat the preparation of the civil theft claim (Count IV) as indivisible from the preparation of the other claims.
In summary, on appeal # X-XX-XXXX, we affirm the Order awarding attorney's fees.
Master Antenna filed a cross appeal contending that the trial court erred in not awarding it $49,067.09 in attorney's fees incurred by Master Antenna in defending the ownership issue in the declaratory judgment suit. Although Master Antenna acknowledges that attorney's fees are not recoverable in declaratory relief actions, Master Antenna nevertheless argues that the declaratory suit fees in this case should be recoverable on the basis that these fees should be taxed as costs of the successful prosecution of the civil theft claim, because Master Antenna could not have prevailed on the civil theft claim without proving the element of ownership from the declaratory relief action. It is clear that attorney's fees for declaratory relief actions are not permitted. Department of Revenue v. Arga Co., 420 So.2d 323, 324 (Fla. 4th DCA 1982), rev. denied, 434 So.2d 886 (Fla. 1983). Thus, we reject Master Antenna's claim for recovery of such fees as a back-door attempt to recover fees for a declaratory relief action. Accordingly, the trial court was correct in not awarding such attorney's fees.
In the second appeal (# X-XX-XXXX), International appeals a number of rulings concerning insurance coverage. International appeals the Final Judgment on Insurance Coverage which finds that International failed to comply with section 627.426(2), Florida Statutes (Supp. 1982), Florida's claims administration statute. Section 627.426(2), Florida Statutes (Supp. 1982), provides that a liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless it follows specific procedures. Florida law requires strict compliance with section 627.426(2), Florida Statutes. Auto Owners Insurance Co. v. Salvia, 472 So.2d 486, 488 (Fla. 5th DCA 1985). Although International may have substantially complied with such section, International admits its failure to strictly comply. Accordingly, the trial court's ruling that International failed to comply with section 627.426(2), Florida Statutes, is affirmed. Consequently, International is precluded from denying coverage based on any "coverage defense."
On the question of insurance coverage for the Association, the trial court ruled that the claims-made policy for the period of June 14, 1983 to June 24, 1986, provided coverage for the Association. The policy at issue is a claims-made policy, as was the first policy that only covered the directors. A claims-made policy is one where coverage depends on the claim being discovered and reported to the insurer during the policy period. Gulf Insurance Company v. Dolan, Fertig & Curtis, 433 So.2d 512, 514 (Fla. 1983). International argues that the policy does not cover the Association's liability because the claim against the Association was not first made during that policy's effective period. The insured counters that International cannot assert this "coverage defense" because the insurer failed to comply with section 627.426(2), Florida Statutes. However, the term "coverage defense" does not include a complete lack of coverage such as in this case, where the policy term was not yet in effect when the claim was first made against the association. See United States Fidelity & Guaranty Co. v. American Fire and Indemnity Co., 511 So.2d 624 (Fla. 5th DCA 1987). An insurer does not assert a "coverage defense" where there was no coverage in the first place. Id. Although we affirm the trial court's ruling *1195 that International failed to comply with section 627.426(2), Florida Statutes, we find that the insurance company is not precluded from denying coverage because International did not assert a "coverage defense" since there was no coverage in the first place. Accordingly, we reverse the trial court's finding that the claims-made policy provides coverage for the Association.
International also contends that the claims-made policy for the period of June 24, 1983 to June 24, 1986, does not provide coverage for the directors because the directors made material misrepresentations on the application for the insurance coverage. This is clearly a "coverage defense" that International waived by failing to comply with section 627.426(2), Florida Statutes. Therefore, the trial court's ruling that the claims-made policy for the period of June 24, 1983 to June 24, 1986, provides coverage for the directors is affirmed.
We agree with International's assertion that the trial court erred in ruling that insurance coverage exists for the award of treble damages for civil theft. The trial court ruled that because International failed to comply with section 627.426(2), Florida Statutes, it is estopped from denying coverage for a risk not covered by the policy. The effect of this ruling is that the doctrine of waiver and estoppel creates insurance coverage the insured did not purchase, and for which International did not charge a premium.
The Association and its directors, however, maintain that treble damages are not excluded by the terms of the policy and that even if coverage for treble damages is excluded, International waived its right to assert such a "coverage defense" because they failed to comply with section 627.426(2), Florida Statutes. We disagree.
First, the insurance policy in this case specifically excluded coverage for "fines or penalties imposed by law, or matters which may be deemed uninsurable under the law." We consider treble damages to be in the nature of a fine or penalty, similar to punitive damages, which are not covered by insurance by reason of public policy. Rosen v. Marlin, 486 So.2d 623, 625 (Fla. 3d DCA), rev. denied, 494 So.2d 1151 (Fla. 1986); McArthur Dairy, Inc. v. Original Kielbs, Inc., 481 So.2d 535, 539-40 (Fla. 3d DCA 1986). The Florida policy of allowing punitive damages to punish and deter those guilty of aggravated misconduct would be frustrated if such damages were covered by liability insurance. U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061, 1064 (Fla. 1983). The same public policy should apply to treble damages. Thus, we hold that treble damages are "fines or penalties imposed by law or matters which may be deemed uninsurable under the law."
Next, the Association and its directors assert that International's failure to strictly comply with section 627.426(2), Florida Statutes, precludes International from asserting the "coverage defense" that coverage is specifically excluded by the terms of the policy. However, we construe "coverage defense" to mean a defense to coverage that otherwise exists or could exist under the law. An insurer does not assert a "coverage defense" where there was no coverage in the first place. U.S. Fidelity & Guaranty, 511 So.2d at 625. In the instant case, as with punitive damages, we have determined that treble damages are in the nature of a penalty and are never insurable by reason of public policy. Under Florida law, the doctrine of waiver and estoppel is not available to bring within the coverage of the policy risks not covered by its terms. Six L's Packing Co. v. Florida Farm Bureau Mutual Insurance Co., 268 So.2d 560, 564 (Fla. 4th DCA 1972), cert. discharged, 276 So.2d 37 (Fla. 1973). Likewise, it follows that coverage for treble damages cannot be created by waiver and estoppel when such coverage could never exist in the first instance. The legislature did not intend, by section 627.426(2), to create coverage under a liability insurance policy that never provided that coverage. U.S. Fidelity & Guaranty, 511 So.2d at 625.
In summary, on the issue of insurance coverage for treble damages, we hold *1196 that the treble damages award is excluded by the terms of the policy; that treble damages are uninsurable as against public policy; that denial of coverage on the grounds of policy exclusion is not a "coverage defense" because a treble damages award is uninsurable as a matter of public policy; that coverage for an award of treble damages cannot be created by International's failure to comply with section 627.426(2), Florida Statutes, because waiver cannot create coverage for policy risks not covered by the policy terms.
We also reverse the trial court's ruling that insurance coverage exists for the compensatory damages awarded for conversion. We agree with International's contention that no coverage exists because the policy specifically provides that coverage does not extend to acts of active and deliberate dishonesty, and that the conduct of the Association and its directors included acts of active and deliberate dishonesty. Although liability for conversion does not always require an act of active and deliberate dishonesty, Eagle v. Benefield-Chappell, Inc., 476 So.2d 716, 718 (Fla. 4th DCA 1985); The Florida Bar v. Heller, 248 So.2d 644, 647 (Fla. 1971), we find that the record supports a conclusion that the conversion by Country Manors Association was an act of active and deliberate dishonesty. At trial, a member of the board of directors testified that when he had the cable equipment dismantled, he and the other directors knew that the system and the equipment belonged to Master Antenna Systems. Furthermore, the policy provision denying coverage for active and deliberate acts of dishonesty is not a "coverage defense." As in our holding for the treble damages issue, we hold here that insurance coverage cannot be extended to include dishonest acts where no such coverage ever existed. See Six L's Packing Co., 268 So.2d at 564. Thus, the fact that International failed to comply with section 627.426(2), Florida Statutes, does not affect the applicability of the rule that waiver and estoppel simply cannot create coverage where coverage never existed. As a result, we hold that no insurance coverage exists for the award of compensatory damages on the conversion claim (Count III).
APPEAL # X-XX-XXXX IS AFFIRMED. APPEAL # X-XX-XXXX IS AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WEBSTER, PETER D., Associate Judge, concurs.
STONE, J., dissents in part and concurs in part with opinion.
STONE, Judge, dissenting in part and concurring in part.
I dissent with respect to the majority's refusal to consider the merits of the appeal on the conversion and civil theft issues. The majority opinion correctly states the applicable rule where a defendant neglects to renew a motion for a directed verdict. However, this court may consider the sufficiency of the evidence because there is plain error apparent on the face of the record, which if not noticed will result in a manifest miscarriage of justice. See generally Fee, Parker & Lloyd, P.A. v. Sullivan, 379 So.2d 412 (Fla. 4th DCA), cert. denied, 388 So.2d 1119 (Fla. 1980); Pickard v. Maritime Holdings Corp., 161 So.2d 239 (Fla. 3d DCA 1964).
Not every failure to redeliver property is a conversion. In this case, the antenna system was lawfully within the Association's possession at the time the Association legally terminated Master Antenna's rights and easement. The portion of the system allegedly stolen essentially consisted of the underground cables and wiring in the buildings. The acts of "conversion" consisted of the claims of ownership by the Association, coupled with acts of "dominion and control" which consisted of removing the movable portions of the equipment and electronics, which were then tendered back to Master Antenna, and preventing Master from coming on the premises and digging up the grounds without making arrangements. The Association had previously filed a lawsuit against Master Antenna seeking declaratory and other relief. That lawsuit was pending at the time of the acts in question. The action sought a determination *1197 of the respective rights of the parties to the antenna system, including seeking provision for the removal of that portion as to which there was no question of Master Antenna's rights. The trial court in that action actually determined that Country Manors did in fact have an ownership interest in a portion of the system. However, that conclusion was reversed on appeal. The appeal was still pending at the time of the filing of the amended counterclaim alleging conversion and civil theft.
The removable portions of the system were offered back to Master which declined to accept them. Removal of the balance would entail digging up cables and removing wiring from walls. There was never a proper demand by Master Antenna for the return of the cables and wiring. Certainly Country Manors had the right to insist that any of Master's agents coming upon the premises make reasonable arrangements, rather than use self help by trespassing. In fact, no proposal was ever made by Master Antenna concerning how and under what conditions the removal should be accomplished. The only evidence which Master Antenna contends constituted a written "demand" for return of the system was obviously not a demand at all for a physical return of the system, and stated only: "[w]hy don't we stop all this involvement with lawyers, and you return the system to us so that we can continue servicing subscribers in Country Manors." (Emphasis added.)
Although, as it ultimately was decided, there was no "contract" between these parties (since the contract had been with the developer) this was essentially a contractual dispute. In my judgment the acts complained of did not constitute conversion. See Fort Caroline Orchids, Inc. v. Guest, 378 So.2d 305 (Fla. 1st DCA 1979); Restatement (Second) of Torts §§ 222A, 238, 240, 260, 272 (1965); 18 Am.Jur.2d Conversion §§ 47, 48, 49 (1985). But even were Master Antenna entitled to compensatory damages on a conversion theory, there is a lack of sufficient evidence of criminal intent, fraud, moral turpitude, or wanton and reckless indifference to support the awards of punitive and treble damages. The fact that financial considerations may have been a motive of some, or even all, of the participants, is not significant. I would therefore strike all awards of punitive and treble damages arising out of the conversion and civil theft claims. See Sporting Goods Distributors, Inc. v. Whitney, 498 F. Supp. 1088 (N.D.Fla. 1980); Bertoglio v. American Savings and Loan Association of Florida, 491 So.2d 1216 (Fla. 3d DCA 1986); Rosen v. Marlin, 486 So.2d 623 (Fla. 3d DCA), rev. denied, 494 So.2d 1151 (Fla. 1986); St. John v. Kuper, 489 So.2d 833 (Fla. 3d DCA 1986); Auto-Owners Insurance Co. v. Hooks, 463 So.2d 468 (Fla. 1st DCA 1985); Henderson v. Petri, 365 So.2d 792 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 75 (Fla. 1979); Brock v. Maine, 293 So.2d 375 (Fla. 4th DCA), cert. denied, 297 So.2d 837 (Fla. 1974); General Finance Corporation of Jacksonville, Inc. v. Sexton, 155 So.2d 159 (Fla. 1st DCA 1963). See also Chrysler Corp. v. Wolmer, 499 So.2d 823 (Fla. 1986).
With respect to compensatory damages, I would remand to require an election of remedies based on a duplication of damages between the interference and conversion counts. See Villeneuve v. Atlas Yacht Sales, Inc., 483 So.2d 67 (Fla. 4th DCA 1986), approved sub nom. Barbe v. Villeneuve, 505 So.2d 1331 (Fla. 1987). Additionally, since Master Antenna is not entitled to treble damages under the civil theft statute, it is not entitled to an award of attorney's fees.
Therefore, I would reverse as to all damages and fees other than those damages arising out of the claim of interference with contract. As to the latter claim I cannot say there was plain error apparent on the face of the record and would, therefore, affirm in part.